**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DIANA DUDA, individually and on behalf of all others similarly situated, | Case No. 1:21-cv-04531 |
| Plaintiff, | Hon. Franklin U. Valderrama, District Judge |
| v. | Hon. Sheila M. Finnegan, Magistrate Judge |
| MEREDITH CORPORATION, | |
| Defendant. | **ORAL ARGUMENT REQUESTED** |

**DEFENDANT MEREDITH CORPORATION'S MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARDS ...................................................................................................... 4

I.     DISMISSAL UNDER RULE 12(B)(1) FOR LACK OF SUBJECT-MATTER
JURISDICTION ..................................................................................................... 4

II.    DISMISSAL UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM ............ 4

ARGUMENT ...................................................................................................................... 5

I.     PLAINTIFF LACKS ARTICLE III STANDING BECAUSE SHE DOES NOT
ALLEGE A COGNIZABLE INJURY ................................................................... 5

II.    PLAINTIFF FAILS TO ADEQUATELY ALLEGE A VIOLATION OF THE
IRPA ...................................................................................................................... 9

      A.    Meredith Did Not Publicly Use or Hold Out Plaintiff's Identity.......................... 9

      B.    Meredith Did Not Use Plaintiff's Identity for a Commercial Purpose ................ 13

      C.    Meredith Did Not Interfere with Plaintiff's Exclusive Use of Her Identity ........ 14

CONCLUSION .................................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbs v. Lily's Talent Agency, Inc.*,
No. 1-10-3726, 2012 WL 6953496 (Ill. App. Ct. Sept. 26, 2012)...................................*passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................5

*Atkins v. City of Chicago*,
631 F.3d 823 (7th Cir. 2011) .............................................................................5

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*,
805 F.2d 663 (7th Cir. 1986) ............................................................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................5

*Blair v. Nevada Landing P'ship*,
859 N.E.2d 1188 (Ill. App. Ct. 2006) .............................................................9, 14

*Brooks v. Thomson Reuters Corp.*,
No. 21-cv-01418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) .........................16

*Clapper v. Amnesty Int'l, USA*,
568 U.S. 398 (2013)........................................................................................4, 8

*Dobrowolski v. Intelius, Inc.*,
17 CV 1406, 2017 WL 3720170 (N.D. Ill. Aug. 29, 2017)..............................10, 14

*Dobrowolski v. Intelius, Inc.*,
17 CV 1406, 2018 WL 11185289 (N.D. Ill. May 21, 2018) ............................13, 14

*Dwyer v. Am. Exp. Co.*,
652 N.E.2d 1351 (Ill. App. Ct. 1995) ..............................................................16

*Gunn v. Thrasher, Buschmann & Voelkel, P.C.*,
982 F.3d 1069 (7th Cir. 2020) ...........................................................................6

*Hooker v. Columbia Pictures Indus., Inc.*,
551 F. Supp. 1060 (N.D. Ill. 1982)...................................................................15

*LaBella Winnetka, Inc. v. Vill. of Winnetka*,
628 F.3d 937 (7th Cir. 2010) .............................................................................3

*Lopez v. Admiral Theatre, Inc.*,
    19 C 673, 2019 WL 4735438 (N.D. Ill. Sept. 26, 2019)......................................11

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)................................................................................8

*Lukis v. Whitepages Inc.*,
    454 F. Supp. 3d 746 (N.D. Ill. 2020) ........................................................8, 11

*Lukis v. Whitepages Inc.*,
    No. 19 C 4871, 2021 WL 3022319 (N.D. Ill. July 16, 2021) ..............................7, 8

*Maremont v. Susan Fredman Design Grp., Ltd.*,
    No. 10 C 7811, 2011 WL 6101949 (N.D. Ill. Dec. 7, 2011) ...........................15, 17

*Martin v. Living Essentials, LLC*,
    160 F. Supp. 3d 1042 (N.D. Ill. 2016) ..........................................................3

*McCready v. eBay, Inc.*,
    453 F.3d 882 (7th Cir. 2006) ......................................................................5

*MetLife Inv'rs USA Ins. Co. v. Pratt*,
    442 F. App'x 589 (2d Cir. 2011) ................................................................12

*MetLife Inv'rs USA Ins. Co. v. Zeidman*,
    734 F. Supp. 2d 304, 312 (E.D.N.Y. 2010) ...................................................12

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010)..................................................................................4

*Nelson v. Harrah's Entm't Inc.*,
    No. 07 C 7227, 2008 WL 2444675 (N.D. Ill. June 13, 2008) .........................15, 17

*Nieman v. Versuslaw, Inc.*,
    No. 12-3104, 2012 WL 3201931, at *4 (C.D. Ill. Aug. 3, 2012)..........................13

*Plotkin v. Ryan*,
    239 F.3d 882 (7th Cir. 2001) ......................................................................7

*Siegel v. Zoominfo Techs., LLC*,
    21 C 2032, 2021 WL 4306148 (N.D. Ill. Sept. 22, 2021).....................................11

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)................................................................................4, 8

*Thompson v. Getty Images (US), Inc.*,
    No. 13 C 1063, 2013 WL 3321612 (N.D. Ill. July 1, 2013) .................10, 11, 13, 14

*Toney v. L'Oreal*,
    406 F.3d 905 (7th Cir. 2005) ...................................................................11, 15, 17

*Trannel v. Prairie Ridge Media, Inc.*,
    987 N.E.2d 923 (Ill. App. Ct. 2013) ...................................................................9, 11

*In re Trans Union Corp., Privacy Litig.*,
    326 F. Supp. 2d 893 (N.D. Ill. 2004) ...................................................................16

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ...................................................................6, 7, 8

*United States Fire Ins. Co. v. Barker Car Rental*,
    132 F.3d 1153 (7th Cir. 1997) ...................................................................10

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
    987 F.2d 429 (7th Cir. 1993) ...................................................................3

*Verde v. Confi-Chek, Inc.*,
    No. 21 C 50092, 2021 WL 4264674 (N.D. Ill. Sept. 20, 2021) .........................5, 6, 7

*Wadsworth v. Kross, Lieberman & Stone, Inc.*,
    No. 19-1400, 2021 WL 3877930 (7th Cir. Aug. 31, 2021) ...................................5

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990)...................................................................4, 8

*Zacchini v. Scripps-Howard Broad. Co.*,
    433 U.S. 562 (1977) ...................................................................15

**Statutes**

765 Ill. Comp. Stat.
    1075/10 ...................................................................13
    1075/30 ...................................................................9
    1075/5 ...................................................................10

**Other Authorities**

Fed. R. Civ. P.
    12(b)(1) ...................................................................1, 2, 4, 6
    12(b)(6) ...................................................................1, 2, 4, 16

U.S. Constitution Article III...................................................................4, 5, 6, 7

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Meredith Corporation ("Meredith") respectfully submits this memorandum of law in support of its motion to dismiss with prejudice Plaintiff Diana Duda's putative class action complaint (the "Complaint," ECF No. 1) for lack of standing and failure to state a claim.

## INTRODUCTION

The Complaint is devoid of any non-conclusory allegation that Meredith violated the Illinois Right of Publicity Act ("IRPA"), which prohibits the public use or holding out of a person's identity in connection with the sale of a product or for advertising.

Plaintiff does not claim Meredith used her identity (name, address, or any other identifying feature) to sell anything, much less that it did so publicly. Instead, Plaintiff alleges that, because she is an existing subscriber to *InStyle* magazine, her name, home address, and the titles of Meredith publications to which she subscribed *might* be contained within a mailing list maintained by Meredith, which the company theoretically *could* make available for private sale to select direct mail marketers. In support of these speculative allegations, Plaintiff attaches to the Complaint a screenshot from the website of a third-party direct mail marketer, NextMark. Plaintiff's name does not appear on this document, and neither does any identifying feature that belongs to her or anyone else.

The Court should dismiss the Complaint for two reasons. First, Plaintiff lacks standing to bring this suit. She fails to allege an injury in fact, asserting a bare procedural violation of the IRPA, which is insufficiently concrete to support standing. Plaintiff also fails to allege a current injury or a threatened injury that is certainly impending. Instead, Plaintiff weaves together a series of hypothetical scenarios about things that theoretically *could* be done with her name and address *if* they were sold to a data aggregator and then later were to fall into the wrong hands. These conjectural allegations do not establish standing, and the Complaint should be dismissed

1

under Rule 12(b)(1).

Second, Plaintiff fails to state a claim for a violation of the IRPA. She does not allege that Meredith publicly used or held out her identity in any way, let alone to sell anything. At best, Plaintiff alleges a hypothetical private sale of a mailing list that might contain her name, where her identity was the actual product. Multiple courts in this district have dismissed IRPA claims in these circumstances. Plaintiff also does not allege any interference with her exclusive right to use her own identity publicly. Each of these defects independently requires dismissal under Rule 12(b)(6).

## BACKGROUND

Meredith is a media company that, among other things, publishes print magazines focused on entertainment, food, lifestyle, parenting, and home. (Compl. ¶ 14.) Plaintiff alleges she is an Illinois resident who subscribed to *InStyle* magazine, a Meredith brand, "[d]uring the time period relevant to this action," but she does not specifically allege the date, month or year when she subscribed to the magazine. (*Id.* ¶ 13.)

Plaintiff alleges that Meredith violated the IRPA by renting out mailing lists that contained the names, addresses and "other personal attributes" of "Plaintiff and every other Illinois subscriber to its magazine publications, including *InStyle* . . . ." (*Id.* ¶ 1.) The sole factual support for this claim is a screenshot from a website operated by a third party, NextMark, titled "Meredith Database – Masterfile Mailing List." (*Id.* ¶ 4 & Ex. A.) The screenshot contains high-level information about Meredith print magazine readership, like the total number of active subscribers. (*Id.*) The screenshot does not contain Plaintiff's name, address, or any identifying information about her or any other Meredith subscriber. (*Id.*) Nor does the screenshot contain any reference to Illinois. (*Id.*) Based on the NextMark screenshot alone, Plaintiff alleges that Meredith "offer[ed] to sell to the community at large and [sold], on the open market to the

general public, mailing lists that identify, by name and personally identifying attributes," Plaintiff and every Illinois resident that ever subscribed to a Meredith print magazine during the past year. (*Id.* ¶ 8.)

Because Plaintiff incorporated the NextMark screenshot into the Complaint, the Court can take judicial notice of the actual webpage, which contains three hyperlinks: "Get Count," "Get Pricing," and "Get More Information." (*Id.* ¶ 4 & Ex. A.)[1] By clicking any of these links, a web visitor would encounter a web form, which requires the visitor to enter their first and last name, job title, company name, industry (which leads to a drop-down list of options that does not include, for example, "member of the public"), country, email address, phone, and also requires the visitor to provide information in a free-form text box explaining "your needs." (*See* Bolton Decl. Ex. 1 at 2-3.) A red button marked "send request" appears at the bottom of the web form, along with the following guidance:

> Your request will be instantly routed to the list supplier. More than 1,400 suppliers are represented here on this website. It's important to fill out the form as completely as possible to ensure your request is handled properly. After submission, you will get a confirmation via email that provides you with your tracking code and list supplier contact information.

(*Id.*)

Plaintiff does not allege that she submitted a request via the NextMark web form, and she

---

[1] The NextMark webpage is both incorporated by reference into the Complaint and central to Plaintiff's claim. For these reasons, the NextMark webpage (including the three hyperlinks and the ensuing web form) is considered part of the pleadings. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). For the Court's convenience, Meredith has included as an exhibit screenshots of the complete NextMark web form Plaintiff references. *See* Exhibit 1 to the Declaration of Lawrence Bolton ("Bolton Decl."). It is well-established that the Court "may take judicial notice of the contents of a website." *Martin v. Living Essentials, LLC*, 160 F. Supp. 3d 1042, 1047 n.5 (N.D. Ill. 2016) (citing *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 944 n. 3 (7th Cir. 2010)).

of course does not allege she received a response to any such request. She alleges only that her name and address are "publicly available" based on these facts.

## LEGAL STANDARDS

### I.    DISMISSAL UNDER RULE 12(B)(1) FOR LACK OF SUBJECT-MATTER JURISDICTION

Under Rule 12(b)(1), a case must be dismissed for lack of subject-matter jurisdiction where the plaintiff lacks standing under Article III of the U.S. Constitution, which limits federal court jurisdiction to "actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (citation omitted). To establish Article III standing, a plaintiff must have suffered an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). To qualify as concrete, the injury must be "real" and not "abstract" or simply "procedural." *Spokeo*, 578 U.S. at 340-41. A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize the person to vindicate that right." *Id.* at 341. In other words, "alleging a bare procedural violation" is insufficient on its own. *Id.* at 342.

For an injury that has not yet occurred, the Supreme Court has "repeatedly reiterated that a 'threatened injury must be *certainly impending* to constitute injury in fact.'" *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis in original). "Allegations of possible future injury," or even an "objectively reasonable likelihood" of future injury, are not sufficient to confer standing. *Id.* at 409–10.

### II.    DISMISSAL UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM

A complaint must be dismissed under Rule 12(b)(6) if it fails to state a claim upon which relief can be granted. A plaintiff must allege "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When stripped of "conclusory statement[s]," *id.*, the Complaint must do more than "create[] a suspicion of a legally cognizable right of action"; it must raise the right to relief above the speculative level. *Twombly*, 550 U.S. at 555 (citation omitted); *Atkins v. City of Chicago*, 631 F.3d 823, 831 (7th Cir. 2011). "[I]f a plaintiff pleads facts which show he has no claim, then he has pled himself out of court." *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

## ARGUMENT

### I. PLAINTIFF LACKS ARTICLE III STANDING BECAUSE SHE DOES NOT ALLEGE A COGNIZABLE INJURY

Plaintiff lacks standing because she does not allege an injury that is concrete, particularized, and actual or imminent. The only injury Plaintiff alleges is a bare, procedural violation of the IRPA: "by offering to sell to the community at large and by selling on the open market to the general public, mailing lists that identify [Plaintiff], by name and other personally identifying information . . . Meredith directly violated the IRPA." (Compl. ¶ 8; *see also id.* ¶ 76.) Unable to allege any concrete harm, Plaintiff contends that she *could* suffer harm *if* her information were somehow to fall into the hands of fraudsters and scammers. (*See, e.g., id.* ¶¶ 32–37). Neither the bare procedural violation of the IRPA nor the hypothetical future harm Plaintiff alleges is sufficient to support standing.

It is well-established that "a statutory violation alone does not confer standing; plaintiff must show that the violation caused her concrete harm." *Verde v. Confi-Chek, Inc.*, No. 21 C 50092, 2021 WL 4264674, at *2 (N.D. Ill. Sept. 20, 2021) (citing *Wadsworth v. Kross, Lieberman & Stone, Inc.*, No. 19-1400, 2021 WL 3877930, at * 2 (7th Cir. Aug. 31, 2021)).

"Article III of the Constitution does not distinguish procedural from substantive claims; it makes injury essential to all litigation in federal court." *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1072 (7th Cir. 2020). Because Plaintiff has not alleged any concrete or specific injury, the Complaint must be dismissed under Rule 12(b)(1).

Two courts in this district have addressed standing challenges to IRPA claims. In *Verde*, the plaintiff alleged that the owner of the website peoplefinders.com had violated the IRPA by displaying a "preview page" containing the plaintiff's name, age, city of residence, and her relatives' names, as well as a link through which a more detailed background report could be purchased. *Verde*, 2021 WL 4264674, at *1. The court noted that the plaintiff did not "allege that any third party ever searched her name or viewed her 'free preview.'" *Id.* at *3. In other words, even assuming the website contained plaintiff's identity, she did not allege that anyone (besides herself) had ever seen it. *Id.* The *Verde* court dismissed the case for lack of standing, holding that plaintiff "fail[ed] to allege a concrete injury because she does not allege defendant disclosed any of her information to any third party." *Id.* at *5.

*Verde* relied on the Supreme Court's recent decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), where the plaintiff asserted claims on behalf of a class of consumers whose credit reports indicated a potential match to names on the U.S. Department of Treasury's OFAC list.[2] *Id.* at 2201–02. The Court held that class members whose credit reports had not been shared with third parties lacked standing because "the mere existence of inaccurate information in a database is insufficient to confer Article III standing." *Id.* at 2209. Comparing TransUnion's database to a letter stored in a desk drawer, the Court explained that a "letter that is not sent does

---

[2] The Office of Foreign Assets Control list identifies terrorists, drug traffickers, and other serious criminals who pose national security risks, with whom it is generally illegal to do business. *TransUnion*, 141 S. Ct. at 2201.

not harm anyone, no matter how insulting the letter is." *Id.* at 2210.

This reasoning applies with equal force here. Plaintiff does not allege that her name or any other identifying information appeared on the NextMark screenshot. Neither her name (nor anyone else's) is on the exhibit she submitted. Since Plaintiff's name is not on the screenshot, it would be impossible for any member of the public to see it there or for it to be "held out." Indeed, the NextMark web form on its face contradicts the notion that any member of the public can obtain a Meredith subscriber list. The web form makes clear that anyone interested in obtaining such a list must submit extensive information, including their name, title, industry, contact information, and "needs"; only then would the request be forwarded to Meredith, which could decide whether or not to provide the list. (*See* Bolton Decl. Ex. 1 at 2.) Because Plaintiff fails to allege that she or anyone else ever requested a list of all Illinois subscribers to *InStyle*, she cannot plausibly allege that her name was on the list or that it ever was (or would be) provided in response.

In both *Verde* and *TransUnion*, the courts dismissed similar claims for lack of standing because plaintiffs did not allege any third party had seen their information. *See TransUnion*, 141 S. Ct. at 2209; *Verde,* 2021 WL 4264674, at *3. Plaintiff's speculation that her name and address *might* be contained in a mailing list maintained by Meredith, which a member of the public theoretically *could* purchase by submitting a request through NextMark, is far too speculative to support Article III standing. *TransUnion*, 141 S. Ct. at 2212; *see also Plotkin v. Ryan*, 239 F.3d 882, 886 (7th Cir. 2001) (affirming dismissal for lack of standing where the plaintiff's injury was "too speculative and generalized").

In *Lukis v. Whitepages Inc.*, No. 19 C 4871, 2021 WL 3022319 (N.D. Ill. July 16, 2021), which also involved free previews containing the plaintiffs' identifying information, the court

reached the opposite result and held the plaintiffs had standing to sue. *Lukis* is easily distinguishable because there, the previews themselves contained the plaintiffs' first and last names, middle initials, age ranges, phone numbers, current addresses, previous residential addresses, and other information. *See Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 751–52 (N.D. Ill. 2020). The free previews in *Lukis* also were designed to sell specific products and services because the previews signaled that the reports (which required purchase) contained more detailed information about the very person in the preview. *Id.* at 752–53. Plaintiff here, by contrast, does not allege that her identity was used to promote the sale of anything disclosed on the NextMark web form.

Plaintiff lacks standing for the additional reason that any alleged injuries are purely speculative and hypothetical. For example, Plaintiff alleges that her information *could* be misused if it falls into the hands of "fraudulent telemarketers," "thieves," and others who "lure unsuspecting consumers into various scams." (*See, e.g.*, Compl. ¶¶ 32–37.) But nowhere does she allege that she *actually* suffered any of these harms, or that they are likely to occur. The Supreme Court repeatedly has made clear that such speculative allegations are not enough to establish standing. *See, e.g.*, *Clapper*, 568 U.S. at 411 (plaintiffs lacked standing where they "merely speculate and make assumptions about whether their communications with their foreign contacts will be acquired"); *TransUnion LLC*, 141 S. Ct. at 2211 (finding "persuasive" the argument that, "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm"); *Spokeo*, 578 U.S. at 340–41 (injury must be "'real,' and not 'abstract'") (citations omitted); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (injury must be "actual or imminent, not 'conjectural' or 'hypothetical'" (quoting *Whitmore*, 495 U.S. at 155)).

For these reasons, the Court should dismiss the Complaint for lack of standing.

## II.  PLAINTIFF FAILS TO ADEQUATELY ALLEGE A VIOLATION OF THE IRPA

Plaintiff alleges that Meredith violated IRPA Section 30(a) (Compl. ¶ 76), which bars the use of "an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent." 765 Ill. Comp. Stat. 1075/30. This claim fails because: (1) Meredith did not publicly use or hold out Plaintiff's identity; (2) Meredith did not use Plaintiff's identity for commercial purposes; and (3) Meredith did not interfere with Plaintiff's exclusive use of her identity.

### A.  Meredith Did Not Publicly Use or Hold Out Plaintiff's Identity

Plaintiff makes no plausible claim that Meredith publicly used or held out her identity. Plaintiff's only allegation that Meredith "publicly used" her identity is that it was incorporated within a product (a mailing list) or used in connection with the sale of a product (a mailing list). (Compl. ¶¶ 20, 73, 74.) But this is flatly contradicted by the very document Plaintiff attached to the Complaint, which contains no reference to Plaintiff or any other person. This pleading failure requires dismissal of the IRPA claim.

To state a claim under the IRPA,[3] a plaintiff must allege "an appropriation of one's name or likeness, without one's consent, for another's commercial benefit." *Blair v. Nevada Landing P'ship*, 859 N.E.2d 1188, 1191–92 (Ill. App. Ct. 2006); *see also* 765 Ill. Comp. Stat. 1075/30 (forbidding the use of "an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent"). "Identity" is "any attribute of an

---

[3] The IRPA became effective in 1999 and "codifies the common law right of publicity" in Illinois. *Abbs v. Lily's Talent Agency, Inc.*, No. 1-10-3726, 2012 WL 6953496, at *4 (Ill. App. Ct. Sept. 26, 2012). The elements of an IRPA claim are "essentially the same" as the elements of a common-law right of publicity claim. *Trannel v. Prairie Ridge Media, Inc.*, 987 N.E.2d 923, 929 (Ill. App. Ct. 2013).

individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." *Id.* 1075/5. The attributes must uniquely identify the plaintiff. *See Dobrowolski v. Intelius, Inc.*, 17 CV 1406, 2017 WL 3720170, at \*6–7 (N.D. Ill. Aug. 29, 2017). A "commercial purpose" means "the *public* use or holding out of an individual's identity . . . on or in connection with the offering for sale or sale of a product, merchandise, goods, or services." 765 Ill. Comp. Stat. 1075/5 (emphasis added).[4]

In Illinois, the "primary rule" of statutory construction is that "courts should ascertain and give effect to the intention of the legislature." *United States Fire Ins. Co. v. Barker Car Rental*, 132 F.3d 1153, 1156 (7th Cir. 1997). It is clear from both IRPA's text and legislative history that this law was passed to address the unauthorized *public* use of a person's identity in connection with a false or misleading endorsement of a product. *See Thompson v. Getty Images (US), Inc.*, No. 13 C 1063, 2013 WL 3321612, at \*2 (N.D. Ill. July 1, 2013). During the Illinois General Assembly's debate over the IRPA, the legislators cited the following examples of "commercial use": "put[ting] my picture on the back of a CTA bus and indicat[ing] that I endorse a particular kind of hair tonic," and that if "a food establishment wanted to say that their cheeseburger and extra spicy chili was endorsed by Speaker Madigan, they couldn't do that without Speaker Madigan's permission." HB 1422, 90th Gen. Assemb., 49th Leg. House Proceedings, Tr. of House Debate 7–8 (Ill. May 21, 1998), available at: https://www.ilga.gov/house/transcripts/htrans90/t052198.pdf.

Of course, there can be no "public use or holding out" if the defendant does not share the

---

[4] The Complaint does not rely on the rest of Section 30, which includes the public uses "(ii) for purposes of *advertising* or promoting products, merchandise, goods, or services; or (iii) for the purpose of *fundraising*." 765 Ill. Comp. Stat. 1075/5 (emphases added).

identity with the public. In *Abbs*, 2012 WL 6953496, at \*5, the Illinois Appellate Court held that

there was no public use—and consequently no "commercial purpose"—when the defendant, a

talent agency, licensed the plaintiff's photograph for continued use in a Gerber baby food

advertisement without plaintiff's consent. The court held that licensing the photograph to a

limited audience, as opposed to the public at large, was "not a 'public use or holding out'"

because the defendant "did not disseminate [the photograph] to a party other than Gerber" or its

advertising agency. *Id.* Because the defendant *privately* licensed the photograph to Gerber (a

limited audience), and the defendant did not itself disseminate the plaintiff's photograph to the

public in connection with the sale of goods or the promotion of its own services, there was no

"commercial purpose" and no IRPA violation. *Id.*

Illinois courts do not find a "public use or holding out" unless the plaintiff's identity was

used to sell or advertise a separate product or service. *See, e.g.*, *Thompson,* 2013 WL 3321612, at

\*2 ("[T]he IRPA prohibits the use of an individual's image to promote or entice the purchase of

some other product . . . .") (citing *Toney v. L'Oreal*, 406 F.3d 905, 910 (7th Cir. 2005)); *Lukis*,

454 F. Supp. 3d at 760 (The use of plaintiff's name, age range, city of domicile, and the names of

some of her relatives in free previews that promoted the sale of monthly subscription services,

was a "textbook example" of a commercial use.); *Siegel v. Zoominfo Techs., LLC*, 21 C 2032,

2021 WL 4306148, at \*3 (N.D. Ill. Sept. 22, 2021) (holding that publicly using an "individual's

full name, alongside certain uniquely identifying information such as the individual's location

and a preview of the individual's email addresses and phone numbers, work information, job

title, and a list of colleagues" to sell subscriptions to the company's services was a commercial

purpose); *Trannel*, 987 N.E.2d at 930 (defendant's "holding out," *i.e.,* representing, plaintiff's

image on the cover of a promotional brochure for design and production services was a

commercial purpose); *Lopez v. Admiral Theatre, Inc.*, 19 C 673, 2019 WL 4735438, at *5 (N.D.

Ill. Sept. 26, 2019) (use of models' photographs to promote defendant's adult entertainment club

was a commercial purpose).

Plaintiff does not provide a single example of Meredith publicly using or holding out her

identity. The only allegation of fact Plaintiff offers is a single screenshot incorporated within the

Complaint, taken from an unaffiliated third party's website, which plainly does not identify

Plaintiff or any other person. (*See* Compl. ¶ 4 & Ex. A.) Indeed, Plaintiff does not allege that

Meredith used her identity in any way except to speculate that her name and address *may* have

been included within a mailing list intended to be used to market products to *her.* (*See* Compl.

¶ 42.) And even assuming that Plaintiff's name appeared on a mailing list, she does not allege it

would have been visible to anyone until *after* someone was "willing to pay" to see it. (*See*

Compl. ¶¶ 62, 66, 67, 70, 76.)[5] The IRPA does not prohibit this type of private use of an identity.

*See Abbs*, 2012 WL 6953496 at *5; *MetLife Inv'rs USA Ins. Co. v. Zeidman*, 734 F. Supp. 2d

304, 312 (E.D.N.Y. 2010) (use of plaintiff's identity in a private contract, while connected to the

sale of a product, was not a "public" use and thus "cannot form the basis for a claim under the

IRPA"), *aff'd sub nom. MetLife Inv'rs USA Ins. Co. v. Pratt*, 442 F. App'x 589 (2d Cir. 2011).

Moreover, to the extent Plaintiff seeks to hold Meredith liable for NextMark's or a third-

---

[5] As discussed *supra* at page 3, the NextMark webform requires extensive information about the requestor, including their contact information, first and last name, job title, company name, industry, country, email address and phone number. (*See* Bolton Decl. Ex. 1 at 2.) Anyone who requests a mailing list also is prompted to provide information about their "needs" in a free-form text box. *Id.* The web form makes clear that the mailing list request will be routed to the "list supplier," *i.e.,* Meredith, which decides whether or not to provide any information. *Id.* Based on the Complaint's allegations, Plaintiff does not appear to have requested a mailing list to confirm that her name and address were even on it. But, as explained *infra*, even if she had, the presence of Plaintiff's name and address on a mailing list would not give rise to an IRPA claim because the mailing list is not a promotion or advertisement. It is the product itself.

party advertiser's allegedly public use of her identity—Plaintiff appears to contend this would occur any time she receives unsolicited mail in connection with a product or service—this theory of liability has been repeatedly rejected by Illinois courts. *See, e.g., Abbs,* 2012 WL 6953496, at *6 (holding that the IRPA does not permit derivative or vicarious liability); *Thompson*, 2013 WL 3321612, at *3 (same).

Because Plaintiff does not plausibly allege that Meredith publicly used or held out her identity, the Court should dismiss the IRPA claim.

### B. Meredith Did Not Use Plaintiff's Identity for a Commercial Purpose

Dismissal is required for the additional reason that the IRPA does not apply where, as here, a plaintiff's "identity" is the product itself. *See Dobrowolski v. Intelius, Inc.*, 17 CV 1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018); *Thompson*, 2013 WL 3321612 at *2. The Complaint makes clear that the product at issue is a Meredith mailing list that *might* contain Plaintiff's name and address. But the mailing list is not a promotion; it is the product.

In *Thompson*, the plaintiff alleged that Getty, a stock image provider, violated the IRPA when it offered photos of plaintiff for license and publicly displayed previews of them. *Id.* at *1. The court held that the "mere sale of someone's photograph" is not a "commercial purpose" under the IRPA. *Id.* at *2. Consistent with the statute's purpose to protect an individual's right to decide whether and how to use their identity for a "commercial purpose," 765 Ill. Comp. Stat. 1075/10, not just "any purpose," the IRPA only "prohibits the use of an individual's image to promote or entice the purchase of some other product than the photograph itself." *Id.* at *2. Since Getty's public use or holding out of the plaintiff's photograph was the "exact thing it [sought] to sell—a photograph," there was no commercial purpose and no IRPA violation. *See id.* (citing *Nieman v. Versuslaw, Inc.*, No. 12-3104, 2012 WL 3201931, at *4 (C.D. Ill. Aug. 3, 2012) (dismissing IRPA claim where the plaintiff's identity was displayed publicly but was "not

being held out or used to entice anyone to buy a product"), *aff'd,* 512 F. App'x. 635 (7th Cir. 2013)).

Similarly, in *Dobrowolski*, 2018 WL 11185289, at *3, the court held there was no IRPA violation when plaintiffs' identities were incorporated within free previews of background reports. In dismissing the IRPA claim, the court explained: "[P]laintiffs' identities are not used to promote a separate product—they are used because plaintiffs' identities are part of the product offered for sale. And this is not a commercial purpose as defined by the statute." *Id.* (citing *Thompson*, 2013 WL 3321612, at *2).

The same legal principles fully apply here. As in *Thompson* and *Dobrowolski*, Plaintiff alleges that her identity is "the product." *Thompson*, 2013 WL 3321612 at *2; *Dobrowolski*, 2018 WL 11185289 at *3. She contends the "commercial purpose" is the offering for sale of a mailing list that might contain her name and address. (*See, e.g.*, Compl. ¶ 1.) But if the sale of someone's actual photograph does not qualify as a commercial purpose, neither can an offer to sell a mailing list that *might* contain one's name and address. *See Thompson*, 2013 WL 3321612 at *2. And unlike the "free preview" cases where the plaintiff's identity was publicly used to sell subscription services, Plaintiff does not allege that Meredith used her identity to promote other products. (Compl. ¶¶ 23, 34, 41–49, 62–70.) Because Plaintiff alleges that her identity is the product itself, there can be no IRPA violation.

### C. Meredith Did Not Interfere with Plaintiff's Exclusive Use of Her Identity

As an additional, independent basis to dismiss the IRPA claim, Plaintiff fails to allege a basic element of a right of publicity suit: interference with the right to use one's own identity.

Under both the IRPA and the common-law tort it codified, a right of publicity claim requires a plaintiff to allege "an *appropriation* of one's name or likeness." *Blair*, 859 N.E.2d at 1191–92 (emphasis added). While the IRPA's text does not require a plaintiff to establish that

her identity was valuable before the alleged appropriation occurred, the claim "requires more than just bare invasion of the plaintiff's privacy interest in his or her name." *Nelson v. Harrah's Entm't Inc.*, No. 07 C 7227, 2008 WL 2444675, at *1 (N.D. Ill. June 13, 2008); *Maremont v. Susan Fredman Design Grp., Ltd.*, No. 10 C 7811, 2011 WL 6101949, at *6 (N.D. Ill. Dec. 7, 2011) ("'[I]t is not the use of the plaintiff's name which constitutes a tort but rather the appropriation of the value of his name and reputation.'") (quoting *Hooker v. Columbia Pictures Indus., Inc.,* 551 F. Supp. 1060, 1062 (N.D. Ill. 1982)).[6]

This means that to establish a right of publicity action under the IRPA or the preexisting common law, a plaintiff must allege interference with the "exclusive ability to use her name and identity for commercial benefit." *Nelson*, 2008 WL 2444675 at *1. That is because "the purpose of the IRPA is to allow a person to control the commercial value of his or her identity," *Toney*, 406 F.3d at 910, just like under common law. *See Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 576 (1977) (citation omitted) ("The rationale for (protecting the right of publicity) is the straightforward one of preventing unjust enrichment by the theft of good will. No social purpose is served by having the defendant get free some aspect of the plaintiff that would have market value and for which he would normally pay."); *Baltimore Orioles*, 805 F.2d at 678 n.26 ("[T]he right of publicity protects against the unauthorized exploitation of names, likenesses, personalities, and performances that have acquired value for the very reason that they are known

_____

[6] Plaintiff's broad, novel theory of IRPA liability would effectively convert the right of publicity into a right of privacy. The two rights, despite having similar origins in common law, are not the same. *See Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 678 n. 26 (7th Cir. 1986) (The "right of privacy protects against intrusions on seclusion, public disclosure of private facts, and casting an individual in a false light in the public eye[;] the right of publicity protects against the unauthorized exploitation of names, likenesses, personalities, and performances that have acquired value for the very reason that they are known to the public.").

to the public."); *Dwyer v. Am. Exp. Co.*, 652 N.E.2d 1351, 1356 (Ill. App. Ct. 1995) (affirming dismissal of right of publicity claim where "defendants' [customer list rental] practices [did] not deprive any of the cardholders of any value their individual names may possess").

Illinois courts have rejected common-law right of publicity claims based on mailing list disclosures for failure to allege appropriation of the value of one's identity. *In re Trans Union Corp., Privacy Litig.*, 326 F. Supp. 2d 893, 896–97 (N.D. Ill. 2004), is instructive. There, plaintiffs alleged that Trans Union had misappropriated their identities by selling "target marketing" lists containing names, addresses, and the existence of at least two associated active credit accounts. The court dismissed the right of publicity claim under Rule 12(b)(6) because plaintiffs had not alleged that Trans Union included their names on the targeted marketing lists to enhance the company's own reputation. *Id.* at 902. In so doing, the court pointedly rejected plaintiffs' theory that the placement of their names and addresses on the marketing list somehow deprived them of the value of their identities. *Id. See also Dwyer*, 652 N.E.2d at 1356 ("[D]efendants' practices do not deprive any of the cardholders of any value their individual names may possess."). Other courts have likewise held that the plaintiff failed to plead appropriation where "the identity is the product." *See, e.g.*, *Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418, 2021 WL 3621837, at *5 (N.D. Cal. Aug. 16, 2021) (holding that plaintiffs "failed to state a claim for a violation of the right of publicity" where their identities were part of a database to which Thompson Reuters sold access and explaining that plaintiffs' "name or likeness is not being 'appropriated' and used to advertise a separate product or service").

Plaintiff says nothing in the Complaint about her own use of her identity or its value. Nor does she explain how Meredith interfered with her ability to use her own name and identity for commercial benefit. Plaintiff's allegations have little in common with a traditional right of

publicity injury, such as the public use of one's identity to promote some other product. *E.g.*, *Toney*, 406 F.3d at 910 (image on hair product packaging). Nor does she allege that she suffered personal damages such as emotional distress, mental anguish, or out-of-pocket expenses resulting from any alleged appropriation. At best, Plaintiff alleges a bare invasion of a privacy interest in her own name, which is not enough to state a right of publicity claim. *Nelson*, 2008 WL 2444675 at *2 (dismissing IRPA claim where plaintiff failed to "allege that defendant has in any way interfered with her exclusive ability to use her name and identity for commercial benefit" when the defendant allegedly disclosed her identifying information to third parties); *Maremont*, 2011 WL 6101949 at *6–7 (holding that plaintiff could not "fulfill the appropriation element" of an IRPA claim despite using plaintiff's online identity to promote its business).

For these reasons, the Court should dismiss the IRPA claim for failure to allege appropriation.

## CONCLUSION

Plaintiff does not plead a concrete or certainly impending injury and lacks standing to sue. She also fails to plausibly allege an IRPA violation because she does not allege any public use of her identity, that her identity was used for commercial purposes, or that Meredith interfered with Plaintiff's exclusive use of her identity. For these reasons, the Court should dismiss the case in its entirety, with prejudice, and award Meredith attorney's fees, costs, and expenses under the IRPA.

Dated: November 15, 2021          Respectfully submitted,

**COOLEY LLP**

By:    */s/ Tiana Demas*
Tiana Demas (*pro hac vice*)
Robert E. Earles (6308936)
444 W Lake Street, Suite 1700
Chicago, IL 60606
Tel: (312) 881-6500
tdemas@cooley.com
rearles@cooley.com

David E. Mills (*pro hac vice*)
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 842-7800
dmills@cooley.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November 2021, I caused a true and correct copy of the foregoing to be filed through the Court's CM/ECF System, which will automatically serve the below counsel of record:

J. Dominick Larry
nick@nicklarry.law
NICK LARRY LAW LLC
8 S Michigan Ave, Suite 2600
Chicago, IL 60603

Arun G. Ravindran
aravindran@hedinhall.com
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131

I also caused a true and correct copy of the foregoing to be served by email on the below counsel:

Frank Hedin
fhedin@hedinhall.com
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131

*/s/ Tiana Demas*
Tiana Demas