# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DIANA DUDA, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>    Defendant. | Case No. 1:21-cv-04531-FUV-SMF<br><br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

J. Dominick Larry
nick@nicklarry.law
NICK LARRY LAW LLC
8 S Michigan Ave, Suite 2600
Chicago, IL 60603
Tel: (773) 694-4669
Fax: (773) 694-4691

*Local Counsel for Plaintiffs and the Putative Class*


Frank S. Hedin (*pro hac vice* to be sought)
fhedin@hedinhall.com
Arun G. Ravindran (*pro hac vice*)
aravindran@hedinhall.com
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 200-8801

*Counsel for Plaintiff and the Putative Class*

**INTRODUCTION**

The Illinois Right of Publicity Act, 765 ILCS 1075/1, *et seq.*, codified each Illinoisan's right of publicity as the "right to control and to choose whether and how to use an individual's identity for commercial purposes." 765 ILCS 1075/10 ("IRPA"). Defendant Meredith Corporation's public use of its customers' identities for commercial purposes unlawfully denies this right to Plaintiff and the proposed Class.

As alleged in the Complaint, Meredith sells its subscribers' identities on the open market without providing notice or obtaining consent. Meredith sells mailing lists containing the names, addresses, and other personally identifying attributes and demographic information about each subscriber, including their gender, age, ethnicity, income, political party, and religion, and the Meredith publication to which they subscribe. Meredith's misconduct not only violates the IRPA, it also allows anyone willing to purchase this data to target particular members of society using their identities, interests and other demographic data, putting Plaintiff and Class members at heightened risk of falling victim to scams. So, while Meredith profits from the use of its customers' identities, it does so at the expense of its customers' statutory right of publicity.

Rather than answering for its wrongs, Meredith has moved to dismiss the Complaint on the grounds that IRPA violations do not manifest an injuries-in-fact sufficient to establish Article III standing. (*See* ECF No. 16 (the "Motion" or "Mot.").) But Illinois's federal courts have long held the opposite. This is because the Illinois legislature specifically codified the common law tort of appropriation of likeness – in recognition of the significant harms that it determined would result from the unauthorized commercial use of its citizens' names and other personally identifying attributes for commercial purposes. Thus, because the Complaint alleges that Meredith used Plaintiff's and the other Class members' names and other identifying attributes for commercial

1

purposes without consent, in violation of the IRPA (as explained in detail below), Plaintiff and each Class members alleged a concrete injury sufficient to confer Article III standing.

Grasping at straws, Meredith argues that the IRPA only prohibits the "public" unauthorized "use" or "holding out" of an individual's identity and that the Complaint fails to allege as much. This argument is also baseless. The statutory definition of "commercial purpose" – "the public use or holding out of an individual's identity" – is written disjunctively such that the word "public" modifies the word "use" but not the phrase "holding out." Thus, an unauthorized, **non-public** holding out of Plaintiff's identity by Meredith (either on a mailing list it sold or in connection with its past sale of a magazine subscription to Plaintiff) is prohibited by the statute no less than an unauthorized public use of Plaintiff's identity. Nevertheless, even if the word "public" modified both "use" and "holding out," the Complaint alleges both that Meredith publicly used *and* publicly held out Plaintiff's and the other Class members' identities by including them on mailing lists it sold on the open market, to any member of the public interested in purchasing them.

As a fallback to its fallback argument, Meredith argues that an unauthorized endorsement of a defendant's products or services is required to state an IRPA claim. That is also legally baseless and ignores the Complaint's allegations. In addition to false endorsements, the statute also broadly prohibits any unauthorized public use or holding out of an individual's identity "on . . . a good, product, merchandise, or service" or "in connection with a defendant's sale of (or an offer to sell) a good, product, merchandise, or service." 765 ILCS 1075/5. Here, the Complaint alleges that Meredith publicly used or held out Plaintiff's identity – her name, coupled with other uniquely identifying personal and subscription-related information – both by selling the subscriber lists (which are goods, products, or merchandise) "on" which Plaintiff's name appeared, as well as by using Plaintiff's name on those lists "in connection with" her prior purchase of *InStyle* magazine

2

(also a good, product, or merchandise) from Defendant.

Finally, in what can best be described as a Hail Mary, Meredith argues that Plaintiff's claim should be dismissed because she fails to "allege any interference with her exclusive right to use her own identity publicly." (Mot. at 2.) But as Meredith recognizes, the IRPA does not require as much, and none of Meredith's cases even concern a claim for a violation of the IRPA. Indeed, the statute's plain text shows that the legislature sought to broadly prohibit any unauthorized commercial use of a person's likeness and not, as the Motion suggests, to narrowly address only interferences of a person's "exclusive use" of his or her identity.

Because each of Meredith's arguments fails, the Motion should be denied.

## ARGUMENT

**I.    The Allegations of the Complaint Readily Establish Plaintiff's Article III Standing**

Defendant first contends that Plaintiff has not suffered a concrete injury sufficient to confer Article III standing. (Mot. at 5.) The argument is nonsense. The Complaint alleges that Defendant used Plaintiff's identity for commercial purposes without her consent; allegations which, by themselves, present ample constitutional mooring for purposes of Article III.

To have standing to sue, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (cleaned up). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. at 1548 (cleaned up).

Plaintiff alleges Meredith publicly used and held out her identity for commercial purposes when it sold mailing lists that identified, by name, address, and other personal attributes, her and

3

every other Illinois subscriber to its magazine publications, and that this conduct deprived them of their right of publicity, *i.e.*, to control and choose how to use their identities for commercial purposes. (*See* Compl. ¶¶ 1-3, 8-10, 75-77.) According to Meredith, these are not injuries – rather, they "are, at best, abstract and constitute nothing more than ... technical statutory violations." (Mot. at 5.) The argument fails for several reasons.

For one thing, there is nothing abstract or technical about monetizing someone's identity without their consent; this is precisely the sort of conduct that the Illinois legislature sought to prohibit when it enacted the IRPA, and the invasions of Plaintiff's and Class members' rights of publicity caused by that conduct are precisely the harms that the statute was enacted to prevent. Moreover, both "tangible" and "intangible" injuries, even those "difficult to prove or measure," can be concrete. *Spokeo*, 136 S. Ct. at 1548. An "intangible harm" is an injury-in-fact if it "has a close relationship to a harm that has traditional been regarded as providing a basis for a lawsuit in English or American courts." *Id*. An intangible harm, like a violation of the IRPA, constitutes an injury-in-fact where "plaintiffs have identified a close historical or common-law analogue for their asserted injury." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021).

Following this analysis, allegations of a violation of the IRPA clearly constitute an injury-in-fact sufficient to satisfy Article III standing. The common law recognized "the commercial-appropriation branch of the right of privacy—what is sometimes called the 'right of publicity,'" meaning "the right to prevent others from using one's name or picture for commercial purposes without consent." *Douglass v. Hustler Mag., Inc.*, 769 F.2d 1128, 1138 (7th Cir. 1985). The IRPA codified that common-law tort, providing that "[t]he right to control and to choose whether and how to use an individual's identity for commercial purposes is recognized as each individual's right of publicity," 765 ILCS 1075/10, and that "[t]he rights and remedies provided for in this Act

4

are meant to supplant those available under the common law," id. § 1075/60.

Indeed, when introducing the IRPA in the Illinois General Assembly, its sponsor stated: "what this legislation does is it codifies the common law right of publicity in Illinois." H.R. Journal, 90th Gen. Assemb., Reg. Sess. 224, 225 (Ill. Apr. 24, 1997). The Seventh Circuit and the Appellate Court of Illinois have recognized the close historical relationship between the IRPA and the common law right of publicity. *See Dancel v. Groupon, Inc.*, 949 F.3d 999, 1009 (7th Cir. 2019) ("[T]he IRPA has supplanted the common law right of publicity."); *Blair v. Nev. Landing P'ship*, 859 N.E.2d 1188, 1192 (Ill. App. 2006). Under the *TransUnion* analysis, an IRPA violation inflicts a concrete injury-in-fact under Article III. *See Lukis v. Whitepages Inc.*, 2021 WL 3022319, at *4 (N.D. Ill. July 16, 2021) (holding that IRPA violations confer Art. III standing).

Indeed, in *Lukis,* which Judge Feinerman described as "an easy case under the governing test," the court had little trouble holding that a bare "IRPA violation inflicts a concrete injury-in-fact under Article III." *Lukis*, 2021 WL 3022319, at *4.[1] Numerous courts throughout the country have held similarly when analyzing other states' right-of-publicity laws. *See Sessa v. Ancestry.com Operations Inc.*, 2021 WL 4245359, at *4 (D. Nev. Sept. 16, 2021) (Nevada Right of Publicity statute); *Fraley v. Facebook*, Inc., 830 F. Supp. 2d 785, 796 (N.D. Cal. 2011) (California's right of publicity statute).

Defendant urges the Court to shut Plaintiff's door to federal court by following the ill-founded reasoning of a non-binding, inapposite, and in any event wrongly decided district court decision in *Verde v. Confi-Chek, Inc.*, 2021 WL 4264674, at *2 (N.D. Ill. Sept. 20, 2021). This

---

[1] Oddly, Meredith cites *Lukis* for the proposition that Plaintiff *lacks* standing. But Judge Feinerman correctly determined that "an IRPA violation inflicts a concrete injury-in-fact under Article III," *Lukis*, 2021 WL 3022319, at *4, based upon allegations materially identical to those alleged by Plaintiff in this case – including that defendant "used [plaintiffs'] identities in advertisements, that they never provided consent for Whitepages to do so . . . and that they do not want Whitepages to use their identities for any commercial purpose."

5

Court need not go along. *Verde* failed to even address whether the plaintiffs' injury had a sufficient analog to common law to satisfy the rubric articulated by the Supreme Court in *Spokeo*. *Id*.

Meredith also contends that the court should follow the analysis in *TransUnion*, but the plaintiffs there alleged violations of a statute, FCRA, that, unlike the IRPA, lacked a common-law analogy that historically provided for a private right of action. *TransUnion LLC*, 141 S. Ct. 2208-09. While it is difficult to imagine any common-law analog to the unauthorized publication of a person's credit report, the opposite is true here, where the conduct underlying Plaintiff's claim for relief is the unauthorized monetization of her good name.

Finally, Meredith says that Plaintiff lacks Article III standing on the grounds that her allegations are too "speculative." (Mot. at 8). There is nothing speculative about Meredith's commercial use, trafficking, and monetization of Plaintiff's identity through its sales of mailing lists that literally contain her name, address, information about her purchase of a magazine subscription from Meredith, and other highly sensitive and intimate personal details about her life. Plaintiff alleges that this happened, and actually cites to a publicly available data card advertising the sale of this data pertaining to all of its customers (including Plaintiff and every member of the Class). (Compl. ¶¶ 4, 8, 46). Meredith's argument concerning the potential for thieves and telemarketers to exploit the data that it sells is a straw man intended to confuse the Court; Plaintiff's claim does not arise from such evils, which are mere consequential risks that undoubtedly result from Meredith's IRPA-violative conduct. As in *Lukis*, Plaintiff's and the Class' standing is based on a well-pled violation of the IRPA, which is by itself sufficient to confer Article III standing. *Lukis*, 2021 WL 3022319, at *4.

In enacting the IRPA, the Illinois legislature did not enact new rights or remedies out of thin air – it codified long-recognized rights at common law and gave consumers the remedies

6

traditionally needed to enforce them. Plaintiff has alleged an injury recognized at common law because she alleges that Meredith deprived her of her right to control and choose how to use her own identity for commercial purposes. *See Lukis*, 2021 WL 3022319, at *4. Plaintiff has thus alleged an injury-in-fact sufficient to establish Article III standing.

## II. The Complaint Adequately Alleges Defendant's "Public Use" or "Holding Out" of Plaintiff's Identity

Defendant contends the Complaint fails to state a claim on the grounds that she "makes no plausible claim that Meredith publicly used or held out her identity." (Mot. at 9.) According to Defendant, "Plaintiff does not provide a single example of Meredith publicly using or holding out her identity." (Mot. at 12.) The argument fails for two primary reasons.

First, the term "commercial purpose" is defined disjunctively as a "public use *or* holding out of an individual's identity," such that the word "public" modifies the word "use" but not the phrase "holding out." *See* 765 ILCS 1075/5. Thus, the "holding out" of an individual's identity need not be "public" to be actionable. *See, e.g.*, *Trannel v. Prairie Ridge Media, Inc.*, 2013 IL App (2d) 120725, ¶ 21 ("Holding out' is not defined, but it must mean something other than 'public use.'" (citing *In re M.T.,* 221 Ill.2d 517, 524 (2006).

Here, even assuming its sales of subscriber lists did not constitute a "public use" of Plaintiff's identity, Meredith was nonetheless clearly "holding out" Plaintiff as its customer – namely, a purchaser of a *InStyle* subscription – by including her name and other personal and subscription-related details. *See Trannel*, 2013 IL App (2d) 120725, ¶ 21 (reversing trial court's grant of summary judgment for defendant on plaintiff's IRPA claim, stating that "the [IRPA] prohibits the holding out—meaning the representation—of an individual's identity on or in connection with certain activities," and explaining that, even though the defendant did not "publicly use" plaintiff's identity, the IRPA nonetheless applied because "defendant was

7

representing, or holding out, plaintiff's and her daughter's identities").

Second, even if "public" modified both "use" and "holding out"—and that is not the case—the Complaint nonetheless alleges that Defendant publicly used and held out Plaintiff's identity because the mailing lists on which Plaintiff's name was disclosed were offered for sale and in fact sold on the open market to anyone willing to pay for them. (Compl. ¶ 64.) These factual allegations plausibly demonstrate that Meredith "publicly" used or held out Plaintiff's identity within the meaning of Illinois law. *See also United Lab'ys, Inc. v. Savaiano*, No. 06 C 1442, 2007 WL 4557095, at *10 (N.D. Ill. Dec. 21, 2007) ("[P]ublicity 'means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.") (quoting Restatement (Second) of Torts § 652D cmt. a (1977) (citations omitted)); *see also Trannel v. Prairie Ridge Media, Inc.*, 987 N.E.2d 923, 929 (Ill. App. Ct. 2d Dist. 2013) ("public," as used in the IRPA, means accessible or distributed to the "aggregate of citizens" or, in other words, the "community at large.").

Defendant's assertion that "Plaintiff does not allege that Meredith used her identity in any way except to speculate that her name and address may have been included within a mailing list" is likewise specious and ignores the plain allegations of the Complaint. (Mot. at 12). As Plaintiff alleges, "the mailing list titled "Meredith Database - Masterfile Mailing List" contains the full name, home address, and title of the publication subscribed to . . . ***of each of the 14,989,713 active U.S. subscribers to its various publications (including Plaintiff and each member of the Class)***." (Compl. ¶ 4 (emphasis added).)[2] In other words, because all subscribers' information is included

---

[2] Meredith argument relies on unpled facts, namely reference to the NextMark webform and the process by which an entity requests the class member information that Meredith holds out to the public (Mot. at 3, 12 fn. 5). But such argument is inappropriate on a motion to dismiss and should not be considered. Considering "matters outside the pleadings" on a Rule 12(b)(6) motion ordinarily converts it to a motion for summary judgment. Fed. R. Civ. P. 12(d). Meredith argues that the court can take judicial notice of the webform, but Defendant's advocacy goes well beyond noticing the exhibit attached to

on the list, and because Plaintiff is a subscriber, Plaintiff's information is on the list. This is hardly an unreasonable inference to draw at this stage of the litigation.

Simply put: at this stage of the case, the factual allegations of the Complaint must be taken as true – not as Defendant has recast them in the Motion to better serve its litigation objectives – and all reasonable inferences drawn in Plaintiff's favor. *See Carlson*, 758 F.3d at 826. The Complaint states a claim, and the Motion should be denied.

### III. The Complaint Adequately Alleges that Defendant Used or Held Out Plaintiff's Identity for a "Commercial Purpose" Within the Meaning of the IRPA

Meredith next argues that "the IRPA does not apply where, as here, a plaintiff's "identity" is the product itself." (Mot. at 13 (citations omitted).) That misses the mark. Plaintiff's claim arises from the first "commercial purpose" prong—which only requires a defendant's use or holding out of her identity "on or in connection with the offering for sale or sale of a product, merchandise, goods, or services,"—and not as Defendant would have the Court believe, the second "commercial purpose" prong. (*See* 765 ILCS 1075/5, 30(a); *see also* Compl. ¶¶ 73-74.)

As previously discussed, the Complaint alleges Defendant's use or holding out of Plaintiff's identity both "on . . . a product, merchandise, goods, or services" – *i.e.*, the lists sold by Meredith– *and* "in connection with" Meredith's "sale of" of "a product[], merchandise, good, or service[]" to Plaintiff – *i.e.*, the *InStyle* subscription Plaintiff purchased from Meredith. The Complaint's allegations that Defendant publicly used or held out Plaintiff's identity on the lists sold by Meredith on the open market, standing alone, sufficiently demonstrate Meredith's

---

Plaintiff's Complaint. (Mot. at 3). For instance, Defendant argues that NextMark might prevent the public from accessing the lists because, once the list is requested, Meredith "decides whether or not to provide any information." (*Id*.) The Court cannot take judicial notice if the evidence is subject to reasonable dispute. *Ware v. Lake Cty. Sheriff's Off*., 2017 WL 914755, at *3 (N.D. Ill. Mar. 8, 2017). The idea that Meredith would decide not to provide Plaintiff's information or that the need to insert basic contact information from the requester would prevent the public from accessing Plaintiff's information is utterly unsupported and plainly subject to further proof requirements, nevermind beyond dispute. As such, this argument should be disregarded.

9

unauthorized use of Plaintiff's likeness for a "commercial purpose" under the definition's first prong, notwithstanding any advertising of a separate product. *See, e.g., Doe v. Flava Works, Inc.*, 2014 IL App (1st) 121491-U (affirming that defendants violated the IRPA where plaintiff's image appeared on two parts of an adult film that was sold to the public on DVD); *Brown v. ACMI Pop Div.*, 375 Ill. App. 3d 276 (1st Dist. 2007) (affirming finding of a commercial purpose sufficient where Defendant used images of Plaintiff on Defendant's website).

Defendant's contention that an IRPA violation requires an "endorsement" to serve a "commercial purpose" is contrary to the plain statutory language, the main treatises on publicity claims, and the reasoning of nearly every court that has addressed the subject. In fact, the court in *Dobrowolski,* to which the Motion repeatedly cites, itself explicitly stated that the "IRPA does not require that the commercial purpose be an apparent endorsement of the defendant's product or service." *Dobrowolski v. Intelius, Inc.*, 2017 WL 3720170, at *8 (N.D. Ill. Aug. 29, 2017) (citing *Woodard v. Victory Records, Inc.*, 2016 WL 1270423, at *10 (N.D. Ill. Mar. 31, 2016) ("IRPA's definition of 'commercial purpose' is broad, 765 ILCS 1075/5, and the act contains no endorsement requirement."). Thus, Plaintiff "need not allege an endorsement or false endorsement to state an IRPA claim." *Id.*

Notably, *Dobrowolski* is readily distinguishable because the plaintiff there alleged an IRPA claim under the second prong ("for purposes of advertising or promoting products, merchandise, goods, or services") of the IRPA's "commercial purpose" definition. *See Dobrowolski,* Dkt. No. 44, ¶¶ 49, 52 (alleging that "Intelius's advertisements have a commercial purpose in that the online advertisements promote the Intelius website and the reports it sells to the public."). Because the plaintiff in *Dobrowolski* pursued IRPA claims under the second prong of the "commercial purpose" definition, whereas Plaintiff's claim arises under the first prong, *Dobrowolski* has no

10

bearing on the issues presented in Defendant's Motion.

Meredith also cites to *Thompson* for the idea that an endorsement of a separate product or service is the only type of commercial purpose the IRPA regulates. But *Thompson* is inapposite too, and for several reasons. First, *Thompson* concerned the sale of celebrity images for explicitly and exclusively "editorial" purposes *e.g.,* non-commercial uses. Such uses are not prohibited under IRPA. *See*, *e.g.*, 765 ILCS 107/35. By contrast, here, Plaintiff pleads that Meredith made its subscriber lists available for sale to anyone for myriad purposes, including marketing companies and data aggregators, not just to purchasers who would use the subscriber information for non-commercial purposes. Second, the *Thompson* Court held that the defendant did not violate the IRPA when it "made [plaintiff's] photos available for commercial use" because the product in question (the photograph depicting the plaintiff that the defendant used on its website) was licensed, and what the defendant was selling was not the photograph itself but the license to use the photograph, pursuant to an arrangement to which the plaintiff had consented. *See Thompson,* 2013 WL 3321612, at *3 ("Thompson contends that even though Getty Images licenses photographs of him for editorial use only, it should nonetheless be liable for any unauthorized commercial use by its customers. In other words, Thompson asks the Court to impose liability on Getty Images because an end-user might choose to breach its license, regardless of the contractual limitations Getty Images imposes on the license."). Here, by contrast, the Complaint repeatedly alleges that Defendant sold the list (a product, good, or merchandise) on which Plaintiff's identity was disclosed to the public at large, *i.e.*, to anyone willing to purchase it, without obtaining Plaintiff's consent (via license or otherwise). (Compl. ¶¶ 1-4, 41-49, 62-76.)

Moreover, *Thompson* was also wrongly decided insofar as it holds that an IRPA claim is only actionable where a defendant's unauthorized use of a plaintiff's identity is done for the

11

purpose of promoting or endorsing a separate product or service. In fact, at the time *Thompson* was decided, the Illinois Court of Appeals had previously affirmed the denial of a motion to dismiss an IRPA claim on facts that were materially indistinguishable from those in *Thompson*. See *Brown v. Corbis Corp.*, 2004 WL 5742324, at *3 (Ill. Cir. Ct. 2004) (in IRPA case where the singer James Brown alleged that the defendant's sale of photographs of Brown violated his right of publicity under the IRPA, trial court held that Brown stated a claim because defendant used Brown's image to sell a "product"), *aff'd by Brown*, 375 Ill. App. 3d at 285. The *Thompson* Court acknowledged the contrary decision in *Brown* (and the Court of Appeals' affirmance) but nevertheless declined to adopt *Brown*'s reasoning. This Court should adopt the reasoning of *Brown* and the legion of authority cited above and hold that IRPA does not require that the commercial purpose be an apparent endorsement of a product or service separate and distinct from that on which the Plaintiff's identity is used.

      Finally, even if the Court were to hold that the IRPA requires the use of Plaintiff's identity to promote a separate product, the Complaint's allegations nonetheless demonstrate that Meredith's use or holding out of Plaintiff's name on the mailing lists offered for sale and sold to the general public, alongside the title (*InStyle*) of the magazine that she purchased from Meredith, served the purpose of endorsing or promoting a separate product; namely, *InStyle* magazine. *See Lukis v. Whitepages Inc.*, 2020 WL 6287369, at *4 (N.D. Ill. Oct. 27, 2020) ("So, even if IRPA liability required that the defendant use the plaintiff's identity to promote a 'separate product'—a matter that is far from clear[]—the free previews promote a subscription service that provides information separate from the aspects of a person's identity revealed in the free previews." (citing *DeSmet ex rel. Estate of Hays v. Cnty. of Rock Island*, 848 N.E. 2d 1030, 1039 (Ill. 2006) (holding that "[w]here an enactment is clear and unambiguous," a court is "not at liberty to depart from the

plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express"))).

Thus, in this case, unlike in *Dobrowolski* or *Thompson*, Plaintiff's claim arises entirely under the first "commercial purpose" prong which specifically concerns public use or holding out of an individual's name "on . . . a product, merchandise, goods, or services" or "in connection with the offering for sale or sale of a product, merchandise, goods, or services." The Complaint alleges that Defendant's magazine subscription purchaser list and the underlying magazine subscription that Plaintiff purchased from Meredith are each a "product[]," piece of "merchandise," or a "good[]." (Compl. ¶ 58). And the Complaint alleges that Defendant publicly used or held out Plaintiff's name "on" the subscription purchaser list it sold, and that such use or holding out of her name on the list was "in connection with" Meredith's past "sale" of a magazine subscription to Plaintiff—a product separate and distinct from the subscriber lists themselves—all without Plaintiff's consent. (*Id*. ¶¶ 60-61). These allegations adequately state a claim for violation of the IRPA against Meredith.[3]

### IV. The IRPA Does Not Require a Showing of Interference with Exclusive Use of One's Own Identity or That Plaintiff's Identity Has Value

Meredith claims that stating an IRPA claim requires allegations that the plaintiff's identity has intrinsic or commercial value such that a violation of the IRPA would "interfere[] with the right to use one's own identity." (Mot. at 14-17.) But it is well established that the IRPA "does not require a plaintiff's identity to have intrinsic value." *Dobrowolski*, 2017 WL 3720170, at *8. The IRPA simply recognizes an individual's "right to control and to choose whether and how to use [their] identity for commercial purposes." 765 ILCS 1075/10. It does not only protect those who

---

[3] Notably, the Motion cites to no legal authority demonstrating that a defendant's use or holding out of an individual's identity in connection with the defendant's past sale of a product to the plaintiff is not actionable under the IRPA.

13

are more likely to have identities with intrinsic commercial value prior to a defendant's use, but rather sensibly protects all Illinoisans from the commercial monetization of their names and other identifying attributes. *See generally* 765 ILCS 1075/1, *et seq.*; 90th Ill. Gen Assem., House Proceedings, April 24, 1997, at 225 (statements of Rep. Turner) (IRPA protects ordinary people "who do not wish to have their identities used in the commercial manner without their consent").

Here, Plaintiff has alleged that Meredith deprived Plaintiff and Class members "right to control and to choose whether and how to use an individual's identity for commercial purposes." (*See* Compl. ¶¶ 9-10.) In addition, the Complaint alleges that consumers' personal information, including Plaintiff's and the other Class members' information, "possesses inherent monetary value." (*See id.* ¶ 26; *see also generally id.* ¶¶ 24-40.) As Plaintiff has pled, "Meredith profits handsomely from the use of its customers' identities in this way, it does so at the expense of its customers' statutory right of publicity." (*Id.* ¶ 11.) Indeed, if Plaintiff's and the other Class members' identities lacked inherent or intrinsic value to Meredith, then Meredith would not, as the Complaint alleges, reap significant monetary profits from the sale and rental of mailing lists comprised of Plaintiff's and the Class Members' identities.

Meredith cites to several cases in support of its argument that an "interference with the right to use one own's identity" is a "basic element" of an IRPA claim, but tellingly none of those decisions even concerned the IRPA. (Mot. at 14-17.) So, while Meredith cites to *Nelson v. Harrah's Ent. Inc.*, 2008 WL 2444675, at *1 (N.D. Ill. June 13, 2008) for the proposition that an IRPA claim "requires more than just bare invasion of the plaintiff's privacy interest in his or her name[,]" that case concerned claims for invasion of privacy and negligent infliction of emotional distress, which differ from an IRPA claim in terms of the conduct they proscribe, as well as their elements and exceptions to liability. (Mot. at 15). Likewise, *In re Trans Union Corp., Privacy*

14

*Litig.*, 326 F. Supp. 2d 893, 896–97 (N.D. Ill. 2004), to which Meredith cites while asserting that "mailing list disclosures should be dismissed "for failure to allege appropriation of the value of one's identity" involved claims of Fair Credit Reporting Act (FCRA), and state law claims of invasion of privacy and misappropriation, unjust enrichment, and unfair competition. *See also Dwyer v. Am. Exp. Co.*, 652 N.E.2d 1351, 1352 (Ill. 1995) (claims of invasion of privacy and consumer fraud); *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *2 (N.D. Cal. Aug. 16, 2021) (claims for (1) California common law right of publicity; (2) a claim for monetary relief for violations of California's Unfair Competition Law (UCL), Cal Bus. & Prof. Code § 17200; (3) unjust enrichment; and (4) a UCL claim for injunctive relief.

Thus, contrary to what Meredith would have the Court believe, a simple reading of the statutory text reveals that neither an interference with the right to use one's own identity nor a quantification of the value of the plaintiff's identity are, as the Motion says, "basic element[s]" of an IRPA claim. (Mot. at 14). The Complaint adequately alleges an unauthorized commercial use of Plaintiff's identity, and the IRPA requires no more.

## CONCLUSION

For the foregoing reasons, the Motion should be denied in its entirety.[4]

Dated: December 8, 2021

**DIANA DUDA**, individually and on behalf of all others similarly situated,

By: s/ J. Dominick Larry
 One of Plaintiff's Attorneys

---

[4] In the unlikely event the Court grants the Motion—in whole or in part—Plaintiffs respectfully request leave to amend under Fed. R. Civ. P. 15(a) to cure any deficiencies identified by the Court. *See Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir.1993) (*quoting Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)) ("Under the Federal Rules of Civil Procedure, leave to amend a complaint 'shall be freely given when justice so requires.' Fed.R.Civ.P. Rule 15(a). In the absence of any apparent or declared reason—such as undue delay, ... undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'").

J. Dominick Larry
nick@nicklarry.law
NICK LARRY LAW LLC
8 S Michigan Ave, Suite 2600
Chicago, IL 60603
Tel: (773) 694-4669
Fax: (773) 694-4691

*Local Counsel for Plaintiffs and the Putative Class*

Frank S. Hedin (*pro hac vice* to be sought)
fhedin@hedinhall.com
Arun G. Ravindran (*pro hac vice*)
aravindran@hedinhall.com
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 200-8801

*Counsel for Plaintiff and the Putative Class*