**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DIANA DUDA, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>                Defendant. | Case No. 1:21-cv-04531<br><br>Hon. Franklin U. Valderrama, District Judge<br><br>Hon. Sheila M. Finnegan, Magistrate Judge |

**DEFENDANT MEREDITH CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 2

I.     PLAINTIFF LACKS STANDING. ............................................................... 2

II.    PLAINTIFF FAILS TO ADEQUATELY ALLEGE THAT MEREDITH
VIOLATED THE IRPA. ............................................................................... 7

    A.    Meredith did not publicly use or hold out Plaintiff's identity. ............. 7

    B.    Meredith did not use Plaintiff's identity for a commercial purpose. ................... 10

    C.    Plaintiff fails to allege appropriation or any other right-of-publicity injury........ 13

III.   THE COURT SHOULD DISMISS PLAINTIFF'S CLAIM WITH PREJUDICE. ........ 15

CONCLUSION...................................................................................................... 15

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbs v. Lily's Talent Agency, Inc.*,
  No. 1-10-3726, 2012 WL 6953496 (Ill. App. Ct. Sept. 26, 2012)............................................7

*After Hours Formalwear, Inc. v. Tuxedos, Inc.*,
  06 C 2460, 2007 WL 404005 (N.D. Ill. Jan. 29, 2007) ..........................................................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 554 (2009)............................................................................................................2, 10

*Brown v. ACMI Pop Div.* (*Brown II*),
  873 N.E.2d 954 (Ill. App. Ct. 2007) .......................................................................................13

*Brown v. Corbis Corp.* (*Brown I*),
  2004 WL 5742324 (Ill. Cir. Ct. July 23, 2004).......................................................................13

*Brown v. Dart*,
  No. 20-CV-4193, 2021 WL 4401492 (N.D. Ill. Sept. 25, 2021) (Valderrama, J.)...................2

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)...................................................................................................................6

*DeLuna v. Burciaga*,
  857 N.E.2d 229 (Ill. 2006) ......................................................................................................13

*Dobrowolski v. Intelius, Inc.*,
  No. 17 CV 1406, 2018 WL 11185289 (N.D. Ill. May 21, 2018).....................................10, 12

*Dobrowolski v. Intelius, Inc.*,
  No. 17-cv-1406 (N.D. Ill. Nov. 29, 2017), ECF No. 54-1 .......................................................12

*Doe v. Flava Works, Inc.*,
  No. 1-12-1491, 2014 WL 470638 (Ill. App. Ct. Feb. 4, 2014).........................................12, 13

*Duffy v. Ticketreserve, Inc.*,
  722 F. Supp. 2d 977 (N.D. Ill. 2010) .......................................................................................15

*Dwyer v. Am. Exp. Co.*,
  652 N.E.2d 1351 (Ill. App. Ct. 1995) ................................................................................13, 14

*Eick v. Perk Dog Food Co.*,
  347 Ill. App. ...............................................................................................................................6

*Fraley v. Facebook, Inc.*,
  830 F. Supp. 2d 785 (N.D. Cal. 2011) ...................................................................................2, 3

TABLE OF AUTHORITIES
(CONTINUED)

Page(s)

*Heng v. Heavner, Beyers & Mihlar, LLC,*
 849 F.3d 348 (7th Cir. 2017) ...............................................15

*Lyons Township ex rel. Kielczynski v. Village of Indian Head Park,*
 84 N.E.3d 1118 (Ill. App. Ct. 2017) ...........................................8

*LaBella Winnetka, Inc. v. Vill. of Winnetka,*
 628 F.3d 937 (7th Cir. 2010) ................................................5

*Lukis v. Whitepages Inc.,*
 454 F. Supp. 3d 746 (N.D. Ill. 2020) ....................................2, 3, 10

*Maksym v. Bd. of Elec. Comm'rs,*
 950 N.E.2d 1051 (Ill. 2011) ...............................................11

*Martin v. Living Essentials, LLC,*
 160 F. Supp. 3d 1042 (N.D. Ill. 2016) .....................................5, 9

*Nelson v. Harrah's Entm't Inc.,*
 No. 07 C 7227, 2008 WL 2444675 (N.D. Ill. June 13, 2008) ...........13, 14

*Nieman v. Versuslaw, Inc.,*
 No. 12-3104, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012) ....................10

*People v. Schreiber,*
 95 N.E. 189 (Ill. 1911) ......................................................8

*Sessa v. Ancestry.com Operations Inc.,*
 No. 220 CV 02292, 2021 WL 4245359 (D. Nev. Sept. 16, 2021)................2, 3

*Spokeo, Inc. v. Robins,*
 578 U.S. 330 (2016)......................................................2, 4, 6

*Thompson v. Getty Images (US), Inc.,*
 No. 13 C 1063, 2013 WL 3321612 (N.D. Ill. July 1, 2013) ........................ *passim*

*Thompson v. Getty Images (US), Inc.,*
 No. 13-c-1063 (N.D. Ill. Feb. 8, 2013), ECF No. 1-1..............................12

*Trannel v. Prairie Ridge Media, Inc.,*
 987 N.E.2d 923 (Ill. App. Ct. 2013) ......................................7, 8

*In re Trans Union Corp. Privacy Litig.,*
 326 F. Supp. 2d 893 (N.D. Ill. 2004) ........................................14

### TABLE OF AUTHORITIES
### (CONTINUED)

Page(s)

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ...................................................................................4, 5, 6

*United Lab'ys, Inc. v. Savaiano,*
    No 06 C 1442, 2007 WL 4557095 (N.D. Ill. Dec. 21, 2007) ...................................9

*United States v. Stands Alone,*
    11 F.4th 532 (7th Cir. 2021) ..................................................................................8

*Universal Film Exchanges, Inc. v. City of Chicago,*
    288 F. Supp. 286 (N.D. Ill. 1968) .......................................................................15

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.,*
    987 F.2d 429 (7th Cir. 1993) ................................................................................9

*Verde v. Confi-Chek, Inc.,*
    No. 21 C 50092, 2021 WL 4264674 (N.D. Ill. Sept. 20, 2021).......................2, 3, 4

*Vt. Agency of Natural Res. v. United States ex rel. Stevens,*
    529 U.S. 765 (2000) ..............................................................................................6

**Statutes**

Ill. Comp. Stat.
    1075/5 ...................................................................................................................11
    1075/35 .................................................................................................................12
    1075/60 .................................................................................................................11

**Other Authorities**

https://www.lexico.com/en/definition/public (last visited Dec. 22, 2021) .....................................8

https://www.meredith.com/marketing-capabilities/print-production (last visited Dec. 21, 2021) ..5

https://www.merriam-webster.com/dictionary/public (last visited Dec. 22, 2021)........................8

Fed. R. Civ. P.
    12(b)(1) .................................................................................................................15
    12(b)(6) .................................................................................................................15

**INTRODUCTION**

The Illinois Right of Publicity Act ("IRPA") is about publicity—the *public* use of one's name or identity. Plaintiff nonetheless argues that the IRPA outlaws the *private* sale of subscriber lists, which involves no publicity at all. No court has endorsed such an interpretation of the IRPA, as it is unsupported by the statutory language, case law, legislative history, and common sense. The IRPA prohibits the nonconsensual *public* use of a person's identity to sell products or services, such as displaying someone's name to sell dog food or using someone's photo in an ad for a hair salon. Plaintiff's novel theory would rewrite the statute, and she cannot identify a single case where a court has permitted such a claim to proceed.

The Court need not reach the merits of Plaintiff's novel claim, however, as she lacks standing. Plaintiff does not allege that Meredith ever publicly displayed her identity in any way. She alleges her name and address appeared in a *nonpublic* magazine subscriber list, and she claims a hypothetical (not concrete) injury on the theory that Meredith *could* have provided this list to an unknown third party in a private transaction. But Plaintiff merely assumes her name or address was on a mailing list, and she does not plausibly allege such information was ever made public. Numerous courts have dismissed claims (including under the IRPA) for lack of standing where, as here, plaintiffs alleged their information was unlawfully within a database but failed to allege those materials were ever disseminated or viewed. A conclusory allegation of an IRPA violation, without any concrete harm, is not enough to satisfy Article III.

In any event, Plaintiff fails to state a claim for an IRPA violation for at least three independent reasons, as she makes: (a) no plausible allegation that Meredith publicly used or held out her identity, as required by the plain language of the statute; (b) no plausible claim that Meredith used her identity in connection with the sale of a separate product (contending instead that her identity *was* the product, which is legally insufficient); and (c) no allegation that

1

Meredith appropriated her identity or otherwise interfered with its use, which dooms Plaintiff's ability to satisfy the IRPA's injury requirement.

Lacking standing or any legal basis for her IRPA claim, Plaintiff resorts to hyperbole and baseless accusations, asserting that Meredith "traffick[ed]" in databases containing its subscribers' "ethnicity," "political party," and "religion." Opp'n at 1, 6. This is false and irresponsible. These purported facts are not in the Complaint, and they are contradicted by the NextMark screenshot Plaintiff incorporated into the pleadings. Made-up facts in an opposition brief are not entitled to a presumption of truth, even on a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2009) (to survive motion to dismiss, complaint must be "plausible on its face"); *see Brown v. Dart*, No. 20-CV-4193, 2021 WL 4401492, at *6 (N.D. Ill. Sept. 25, 2021) (Valderrama, J.) (dismissing claims based on implausible factual allegations).

## ARGUMENT

### I.   PLAINTIFF LACKS STANDING.

Plaintiff lacks standing because she has not alleged a "concrete and particularized" injury, as required by Article III. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). She alleges that her name and address appeared in a nonpublic mailing list of *InStyle* subscribers, and that Meredith *might* have disclosed that list to a third party. Compl. ¶¶ 4, 41–49. But Plaintiff does not allege that anyone actually viewed her identifying information, as required to plead a concrete injury. *See Verde v. Confi-Chek, Inc.*, No. 21 C 50092, 2021 WL 4264674, at *2 (N.D. Ill. Sept. 20, 2021). Instead, Plaintiff asks the Court to make speculative and unsupported inferences based on a third-party webpage that *does not contain* Plaintiff's or any other Meredith subscribers' identities. Compl. at ¶ 4 & Ex. A. This pleading failure distinguishes this case from all the cases on which Plaintiff relies for standing (*see* Opp'n at 5 (citing *Lukis*, *Sessa*, and *Fraley*)), where other plaintiffs took the basic pre-complaint investigative step of confirming that

the accused websites actually used their identities in public-facing promotional materials.

In *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 751–52 (N.D. Ill. 2020), the plaintiffs alleged the public display of their full names, age ranges, phone numbers, addresses, and other information in "free previews" for paid background reports. In their pleadings, the plaintiffs included images of these "free previews," which actually showed their identifying information. *Id.* at 752, 755. The Court's decision on standing rested on these "well-pleaded allegations," which it was required to accept as true (and the defendant did not challenge as factually inaccurate). *Lukis*, 2021 WL 3022319, at *3. No such allegations are made here.

Likewise, in both *Sessa v. Ancestry.com Operations Inc.*, No. 220 CV 02292, 2021 WL 4245359, at *1 (D. Nev. Sept. 16, 2021), and *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 790 (N.D. Cal. 2011)—which did not involve IRPA claims—the courts' decisions on standing depended on the plaintiffs' specific allegations of fact that their identities were publicly displayed for promotional purposes without their consent. In *Sessa*, the plaintiffs alleged Ancestry used their names, photos, and likenesses in targeted marketing emails and pop-up ads for paid subscription services. *Sessa*, 2021 WL 4245359 at *6. Similarly, the *Fraley* plaintiffs alleged their names and photos were featured in "Sponsored Story" ads that falsely indicated they endorsed products or companies. *Fraley*, 830 F. Supp. 2d at 797. Here, Plaintiff does not allege that her identity was used to promote the sale of anything.

Plaintiff barely addresses the arguments and authorities explaining why her allegations are insufficiently concrete to confer standing. While Plaintiff merely dismisses *Verde* as "wrongly decided" (Opp'n at 5), the case is squarely on point. There, the plaintiff alleged the website peoplefinders.com displayed her name, age, and other personal information on a "free preview" page that invited visitors to buy a more detailed background report. *Verde*, 2021 WL

3

4264674, at *1. The Court acknowledged that this public use of the plaintiff's identity might violate the IRPA, and that a properly pleaded IRPA violation "certainly could cause a concrete injury." *Id.* at *4. But the Court held the plaintiff lacked standing because she did "not allege defendant disclosed any of her information to any third party," and therefore "fail[ed] to allege a concrete injury" as required by Article III. *Id.* at *5.[1]

Plaintiff likewise fails to address *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021), where the plaintiff alleged that a consumer credit database falsely indicated certain consumers were on the OFAC list, an error that almost certainly would have jeopardized their ability to obtain credit. *Id.* at 2201–02. The plaintiff, however, did not allege TransUnion had disclosed her false information to anyone, and the Court held the alleged injury was insufficiently concrete because "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." *Id.* at 2209–10.

Instead of reckoning with these cases, Plaintiff argues that merely alleging an IRPA violation satisfies Article III because the IRPA codified a traditional common-law right. Opp'n at 4–5. This is simply wrong. No matter what the claim, plaintiffs in federal court must always allege a concrete injury. *See, e.g.*, *Spokeo*, 578 U.S. at 341 (a plaintiff cannot "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right" because "standing requires a concrete injury even in the context of a statutory violation"); *Verde*, 2021 WL 4264674, at *5 (an otherwise cognizable IRPA claim cannot satisfy Article III if the plaintiff does not also allege a concrete injury).

---

[1] The allegations here are even more conjectural than in *Verde*: the bare allegation of an IRPA violation, without an accompanying supported allegation of concrete injury—i.e., that a mailing list containing Plaintiff's identity was actually disclosed to a third party—does not confer standing. *See Verde*, 2021 WL 4264674, at *5; *see also Spokeo*, 578 U.S. at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation.").

In an attempted end-run around Article III, Plaintiff fashions a faulty syllogism: "all [Meredith] subscribers' information is included on the list, and because Plaintiff is a subscriber, Plaintiff's information is on the list." Opp'n at 8–9. Specifically, Plaintiff urges the Court to infer the public disclosure of her identity on the assumptions that: (a) the reference to 14,989,713 active subscribers in the NextMark screenshot refers to *all* Meredith subscribers; and (b) anyone can obtain a copy of the subscriber list. *Id.* These speculations are neither reasonable nor accurate. First, the screenshot does not refer to "all" Meredith subscribers or "each" subscriber, as Plaintiff claims. *Compare* Compl. Ex. 2 (screenshot that simply refers to "active subscribers" and "subscribers"), *with* Compl. ¶ 4 (conclusory assertion that the screenshot contains "each of the [] active U.S. subscribers to [Meredith's] various publications (including Plaintiff and each member of the Class)"). Second, the Court can take judicial notice that Meredith's public website states there are approximately *21 million subscribers* to its magazines.[2] Given this delta of over six million subscribers, there is no reasonable basis to infer that Plaintiff's identifying information was on the list or was disclosed to anyone, much less publicly used or held out, as required to allege concrete injury. *See TransUnion*, 141 S. Ct. at 2210 (plaintiff lacked standing where there was no reasonable basis to infer concrete harm). Third, the full NextMark webform flatly contradicts the notion that any member of the public can obtain a Meredith subscriber list.[3]

Despite all this, Plaintiff argues that simply alleging an IRPA violation is enough to establish a concrete injury because the IRPA "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."

---

[2] *See* https://www.meredith.com/marketing-capabilities/print-production (last visited Dec. 21, 2021). The Court "may take judicial notice of the contents of a website." *Martin v. Living Essentials, LLC*, 160 F. Supp. 3d 1042, 1047 n.5 (N.D. Ill. 2016) (citing *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 944 n.3 (7th Cir. 2010)).
[3] ECF No. 16-1 at 5–7.

Opp'n at 4 (citing *Spokeo*, 578 U.S. at 341). As a threshold matter, *Spokeo* said nothing about whether the IRPA (or the common-law right of publicity) has this "close relationship." 578 U.S. at 341–42. The case on which *Spokeo* relied for the concept of a "traditional" harm, *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 774–77 (2000), involved *qui tam* actions, which "originated around the end of the 13th century" and existed in "England and the American Colonies." *Id.* at 774. The same cannot be said for the IRPA, which became law in 1999, or even the common-law right of publicity, which was first recognized by an Illinois court in 1952. *See Eick v. Perk Dog Food Co.*, 347 Ill. App. Ct. (1952). And, in any event, *TransUnion* cautions that "history and tradition" are "not an open-ended invitation for federal courts to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." 141 S. Ct. at 2204.

In an about-face, Plaintiff now suggests she does not assert standing based on a risk of future injury (Opp'n at 6), despite having devoted pages of the Complaint to alleged evils of the data-broker industry and how consumer information is "often sold to thieves." Compl. ¶¶ 24–40. But the only injury Plaintiff alleges is prospective and hypothetical, which is certainly insufficient. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) (plaintiffs lacked standing to challenge surveillance program because they "merely speculate and make assumptions about whether their communications with their foreign contacts will be acquired").

The implications of Plaintiff's standing argument demonstrate its fallacy. In Plaintiff's view, each of the millions of Illinois magazine subscribers can sue the publishers under the IRPA in federal court, right now and without more—merely because their identifying information might be on a subscriber list that theoretically could, someday, be disclosed without their consent in a manner that might, or might not, run afoul of the statute. That cannot be, and is not, the law.

## II.     PLAINTIFF FAILS TO ADEQUATELY ALLEGE THAT MEREDITH VIOLATED THE IRPA.

Plaintiff's case hinges on several implausible interpretations of the plain language of the IRPA, *all* of which must succeed for Plaintiff to proceed. None has merit.

### A.     Meredith did not publicly use or hold out Plaintiff's identity.

As explained in Meredith's motion (Mot. at 9–11), there can be no IRPA violation if there is no publicity. *See, e.g.*, *Abbs v. Lily's Talent Agency, Inc*., No. 1-10-3726, 2012 WL 6953496, at *4 (Ill. App. Ct. Sept. 26, 2012). The plain language of the statute requires a "public use or holding out" of Plaintiff's identity in order for there to be a "commercial purpose" triggering the statute's application.

Urging a right of publicity that requires no publicity, Plaintiff contends that "the 'holding out' of an individual's identity need not be 'public' to be actionable" under the IRPA. Opp'n at 7 (citing *Trannel v. Prairie Ridge Media, Inc.*, 987 N.E.2d 923, 929–30 (Ill. App. Ct. 2013)). But in *Trannel*, the defendant indisputably "published" the plaintiff's photo on a media kit promoting a local magazine. 987 N.E.2d at 930–31. This material was disseminated to advertisers, the plaintiff's friend saw it, and that is how the plaintiff learned of its publication. *Id.* at 927. Here, Plaintiff does not (and could not) allege that any of her identifying information was published at all.

Plaintiff cites *Trannel* on an issue unnecessary to its finding of an IRPA violation— namely, what the word "public" means. Based on the dictionary definition of "public" as a *noun*—"aggregate of the citizens," "everybody," or the "people at large"—and the limited record evidence, the court could not conclude that the promotional material had been disseminated widely enough to the "public." *Id.* at 929–30. But the IRPA uses "public" as an *adjective*, not a noun. Based on the definition of "public" as an adjective—"done, perceived, or existing in open

view"[4]—the defendant's use of the photo was plainly public; it was distributed to at least 31 of the magazine's advertisers, without any apparent restriction on its display or redistribution, as evidenced by the plaintiff's friend having seen it. *Id.* at 927, 929.

In any event, the precise point for which Plaintiff cites *Trannel*—that the statute employs the word "public" solely to modify the word "use" and not the term "holding out"—is simply wrong, and this Court need not accept it.[5] "Public" modifies both "use" and "holding out" under the most natural reading of the sentence and in keeping with everyday statutory drafting and construction. *See, e.g.*, *Lyons Township ex rel. Kielczynski v. Village of Indian Head Park*, 84 N.E.3d 1118, 1126 (Ill. App. Ct. 2017) ("Given the commonly understood principles of grammar and usage, we find the legislature intended for the adjective 'oral' to modify both 'promise' and 'misrepresentation'. The fact that the disjunctive term 'or' was used does not negate the legislature's ability to use one adjective to modify multiple nouns."); *United States v. Stands Alone*, 11 F.4th 532, 535 (7th Cir. 2021) (adjective "forcibly" modified a list of "six verbs separated by the disjunctive 'or'"). Even without the modifier "public," the term "hold out" already connotes a *public* representation. *See, e.g.*, *People v. Schreiber*, 95 N.E. 189, 190 (Ill. 1911) (interpreting "hold himself out" as "designed to prevent persons . . . from imposing upon *the public* by holding themselves out as duly licensed attorneys at law or from representing to *the public* that they were authorized to practice law") (emphasis added).

---

[4] *Public (adj.)*, Lexico (Oxford University Press), https://www.lexico.com/en/definition/public (last visited Dec. 22, 2021); *see also public (adj.)*, *Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/public (last visited Dec. 22, 2021) (defining "public" to mean "exposed to general view").

[5] This Court, as a federal court sitting in diversity, "must apply state law as the Illinois Supreme Court would apply it," even if this requires predicting how it would interpret the IRPA. *Thompson*, 2013 WL 3321612, at *3–4 (citations omitted). Because the IRPA's plain text, purpose, and history support the view that the word "public" applies to both the "use" and the "holding out" of an identity, this Court should reject a contrary construction from an intermediate appellate court. *Id.* at *4.

Plaintiff acknowledges that "publicity" means "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Opp'n at 8 (citing *United Lab'ys, Inc. v. Savaiano*, No 06 C 1442, 2007 WL 4557095, at *10 (N.D. Ill. Dec. 21, 2007). Accordingly, the existence of a third-party webpage on which Plaintiff's name may (or may not) appear cannot, without more, give rise to an IRPA violation. And that is all Plaintiff alleges.

Undeterred, Plaintiff urges the Court to ignore the statutory language—specifically, "publicity" and "public use or holding out"—and indulge a series of unsupported inferences to conclude that "because all subscribers' information is included on [the NextMark webpage], and because Plaintiff is a Meredith subscriber, Plaintiff's information is on the list."[6] Opp'n at 8–9. This argument fails for several reasons.

First, the mere existence of a name and address on a mailing list does not give rise to an IRPA violation. The identity must be publicly used or held out, and none of Plaintiff's cases state otherwise. *Id.* at 7–9. Second, the number of subscribers on the NextMark webpage is six million short of the total Meredith subscribers, so it is not a fair conclusion that "Plaintiff's information is on the list." *See supra* at 5; Opp'n at 9.

And while Plaintiff claims that Meredith sold mailing lists to "any member of the public willing to purchase them" (*e.g.*, Compl. ¶¶ 64–65, 68), she does not allege any member of the public *actually purchased* a list bearing her identity. In stark contrast, alleged IRPA violations in other cases were non-speculative precisely because the plaintiffs alleged (and showed) their

---

[6] Plaintiff does not dispute the accuracy or authenticity of the complete NextMark web form Meredith submitted, and Plaintiff incorporated part of the same document in her Complaint. *Compare* Compl. ¶ 4, *with* Decl. of L. Bolton, Exhibit A at 2, ECF. No. 16-2. Therefore, the Court may consider the contents of the NextMark web form under either the judicial notice or incorporation by reference doctrine. *See, e.g.*, *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 430 n.1 (7th Cir. 1993) (incorporation by reference); *Martin*, 160 F. Supp. 3d at 1047 n.5 (judicial notice).

identities were publicly displayed. *See, e.g.*, *Lukis*, 454 F. Supp. 3d at 751–56. Here, the NextMark screenshot does not contain the name or other identifying information of *any* person. *See* Compl. ¶ 4 & Ex. A. Had Meredith publicly disclosed Plaintiff's identity for a commercial purpose, surely she would be able to provide a concrete example. But she has not, and Plaintiff's requested inference cannot be drawn given the "need at the pleading stage for allegations plausibly suggesting (not merely consistent with)" an actionable claim. *Twombly*, 550 U.S. at 557. Plaintiff's conclusory allegation that Meredith disclosed her identity in violation of the IRPA "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation omitted).

### B.     Meredith did not use Plaintiff's identity for a commercial purpose.

The IRPA does not apply where the plaintiff's "identity" is the product itself—the "public use or holding out" must relate to a *separate* product. Mot. at 13; *see Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018); *Thompson v. Getty Images (US), Inc.*, No. 13 C 1063, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013); *see also Nieman v. Versuslaw, Inc.*, No. 12-3104, 2012 WL 3201931, at *4 (C.D. Ill. Aug. 3, 2012) (no IRPA violation where plaintiff's identity, while published, was not "held out or used to entice anyone to buy a product").

Plaintiff acknowledges this requirement but illogically contends it applies only to the second mention of "product" in the statutory definition of "commercial purpose" and not the first. *See* Opp'n at 9. Plaintiff also argues that the "separate product" can be a past sale of a product to the Plaintiff herself. *Id.* at 13. No court has endorsed either theory, and neither makes any sense.[7]

---

[7] Plaintiff also argues in passing, and without any authority, that that the "separate product" can be a past sale of a product to Plaintiff herself. But Plaintiff makes no allegation that Meredith publicly used or held

As a matter of common sense and statutory construction, "product" means the same thing throughout the statute's one definition of "commercial purpose":

> "Commercial purpose" means the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising.

765 Ill. Comp. Stat. 1075/5. None of the relevant cases interpreting the IRPA parses the meaning of "product" as it appears in subsection (i) versus subsection (ii), *see, e.g., Thompson,* 2013 WL 3321612, at *2, and there is no reason why "product" should be interpreted two different ways within the same sentence. "Where the same, or substantially the same, words or phrases appear in different parts of the same statute they will be given a generally accepted and consistent meaning, where the legislative intent is not clearly expressed to the contrary." *Maksym v. Bd. of Elec. Comm'rs*, 950 N.E.2d 1051, 1062 (Ill. 2011) (declining to interpret the term "residency" differently "just three words later" in the same subsection of a statute). Here, it would be nonsensical to treat "product" differently in subsection (i) versus subsection (ii) especially since there is substantial overlap between the two subsections—e.g., an ad using the plaintiff's name could be both (i) "in connection with the sale or offering for sale of a product" and (ii) "for purposes of advertising or promoting products." "Product" has to mean the same thing in both places if the statute, including its prohibitions, is to be intelligible.

Indeed, the requirement that the promoted "product" be something other than the person's identity reflects the Legislature's explicit intent that the IRPA codify *only* the common-law right of publicity and not an all-purpose right to privacy in the identifying information itself. *See* 765 Ill. Comp. Stat. 1075/60 ("Except for the common law right of publicity, the rights and

---

out her identity to entice anyone to subscribe to *InStyle.* The sole allegation about her subscription is that Plaintiff "subscribed to Meredith's *InStyle* magazine . . . while residing in, a citizen of, and present in Illinois." Compl. ¶ 13.

remedies provided under this Act are supplemental to any other rights and remedies provided by law including . . . the common law right of privacy."). The statute is plainly aimed at the use of someone's identity to sell *something else*.

The "separate product" requirement animates the "commercial purpose" limitation as a whole, as *Dobrowolski* and *Thompson* demonstrate, and Plaintiff's attempt to distinguish them fails. In *Dobrowolski*, the plaintiffs clearly alleged an IRPA violation under both the "sale" and "advertising" prongs, and the Court rejected liability under both. 2018 WL 11185289, at *3 ("The plaintiffs' identities are not used to promote a separate product—they are used because plaintiffs' identities are *part of the product offered for sale*.") (emphasis added).[8]

So too in *Thompson*, where the plaintiff unsuccessfully alleged an IRPA violation under the "sale" prong because there was no connection to "some other product." 2013 WL 3321612, at *2 ("The statute's commercial purpose requirement does not prohibit the mere *sale* of someone's photograph.") (emphasis added); *see* Amended Complaint ¶¶ 6, 17, *Thompson v. Getty Images (US), Inc.*, No. 13-c-1063 (N.D. Ill. Feb. 8, 2013), ECF No. 1-1 ("Getty posted . . . approximately six pictures of him on his website which were offered for *sale*") (emphasis added). This Court also should reject Plaintiff's attempt to distinguish *Thompson* based on the availability of statutory exemptions not even discussed in the case. Opp'n at 11; *Thompson*, 2013 WL 3321612 at *2–3; *see generally* 765 Ill. Comp. Stat. 1075/35 (IRPA "creative works" exemption, among others).[9]

---

[8] *See* Plaintiffs' Combined Opposition to Defendants' Motion to Dismiss at 9, *Dobrowolski v. Intelius, Inc.*, No. 17-cv-1406 (N.D. Ill. Nov. 29, 2017), ECF No. 54-1 ("Plaintly, Defendants use Plaintiffs' identities 'in connection with the offering for sale or sale of a product' or 'for purposes of advertising or promoting products.'").

[9] Further, contrary to Plaintiff's straw man, Meredith does not maintain that an IRPA violation requires a plaintiff to allege an "endorsement." Opp'n at 10. However, the legislative history makes clear that a nonconsensual public endorsement was the primary harm contemplated when the IRPA was passed. *See* Mot. at 10.

*Flava Works* and the two *Brown* decisions also do not support Plaintiff's novel "commercial purpose" theory. In *Flava Works*, the only IRPA provisions at issue concerned damages and attorney fees, not liability. *See Doe v. Flava Works, Inc.*, No. 1-12-1491, 2014 WL 470638, at *2–3 (Ill. App. Ct. Feb. 4, 2014). In *Brown v. ACMI Pop Div.* (*Brown II*), 873 N.E.2d 954, 955 (Ill. App. Ct. 2007), the Illinois Appellate Court reviewed a trial court decision (*Brown v. Corbis Corp.* (*Brown I*), 2004 WL 5742324 (Ill. Cir. Ct. July 23, 2004)), based on a procedure where the defendant "admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim." *DeLuna v. Burciaga*, 857 N.E.2d 229, 236 (Ill. 2006). Consequently, *Brown II* says nothing about the legal sufficiency of the complaint even in *that* case, let alone this one. Further, the only court to consider either *Brown I* or *Brown II* declined to follow them as to IRPA liability. *See Thompson*, 2013 WL 3321612, at *4 (rejecting *Brown I* and *Brown II*'s holding on IRPA liability because it "contradicts the plain language and purpose of the statute as interpreted by this Circuit's case law and informed by the legislative history"). No court has applied either *Brown* decision to extend IRPA liability to the sale of identifying information.

### C. Plaintiff fails to allege appropriation or any other right-of-publicity injury.

Plaintiff cannot explain why her claim should survive under the IRPA when it would not survive under Illinois common law. *See Dwyer v. Am. Exp. Co.*, 652 N.E.2d 1351, 1356 (Ill. App. Ct. 1995) (affirming dismissal of Illinois common-law right-of-publicity claim based on customer list rental practices). A plaintiff must allege a right-of-publicity injury—some appropriation or interference with the use of her identity—to state a claim under the IRPA. *Nelson v. Harrah's Entm't Inc.*, No. 07 C 7227, 2008 WL 2444675, at *1 (N.D. Ill. June 13, 2008) (The IRPA "requires more than just bare invasion of the plaintiff's privacy interest in his or her name."); s*ee also After Hours Formalwear, Inc. v. Tuxedos, Inc.*, No. 06 C 2460, 2007

WL 404005, at *2 (N.D. Ill. Jan. 29, 2007) (explaining the "statutory standing" requirement, i.e., that an "injury, by itself, is not enough" and must be of the "'type the [law was] intended to prevent and that flows from that which makes defendants' acts unlawful'") (citation omitted).

Plaintiff acknowledges that in passing the IRPA, the Legislature intended to "'codif[y] the common law right of publicity in Illinois.'" Opp'n at 4–5 (internal citation omitted). When the IRPA was passed, Illinois common law did not prohibit the customer list rental practices alleged here. *See Dwyer*, 652 N.E.2d at 1356 (affirming dismissal of right of publicity claim where "defendants' [customer list rental] practices [did] not deprive any of the cardholders of any value their individual names may possess"); *see also In re Trans Union Corp. Privacy Litig.*, 326 F. Supp. 2d 893, 902–03 (N.D. Ill. 2004) (plaintiffs failed to state common-law right of publicity claim based on alleged placement of their names and addresses on marketing list).

Plaintiff's feeble attempt to distinguish *Dwyer, Trans Union, and Nelson* as not "concern[ing] the IRPA" fails. Each case rejected a right-of-publicity claim under the IRPA (or the common law it codified) because there was no appropriation and therefore no right-of-publicity injury. *See Dwyer*, 652 N.E.2d at 1355–56 (rejecting "plaintiffs' appropriation claim" under Illinois common law); *Trans Union*, 326 F. Supp. 2d at 902 (same); *Nelson*, 2008 WL 2444675, at *2 (plaintiff "fail[ed] to sufficiently plead a cause of action for the appropriation of her name [] at common law or under the Right of Publicity Act").

Plaintiff now asserts (for the first time in her opposition brief) that her identity "possesses inherent monetary value" and that she was somehow deprived of this. Opp'n at 14 (citing Compl. ¶¶ 24–40). But the Complaint's paragraphs 24–40 make only general allegations about the use of consumers' personal information in a secondary market and contain no allegations about how Meredith supposedly appropriated the value of Plaintiff's identity or

interfered with her use of it. And even were this Court inclined to credit Plaintiff's newly minted assertion (though it should not),[10] she elsewhere concedes that these same allegations do not give rise to a claim. *See* Opp'n at 6 ("Plaintiff's claim does not arise from such evils"). Self-contradicted allegations are not entitled to the presumption of truth. *See Universal Film Exchanges, Inc. v. City of Chicago*, 288 F. Supp. 286, 292 (N.D. Ill. 1968) ("[F]acts which are not well pleaded, and which are effectively contradicted by plaintiff's own pleading, need not be accepted at face value.").

## III. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIM WITH PREJUDICE.

Courts "have broad discretion to deny leave to amend where . . . amendment would be futile." *Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017). Amendment would be futile here because further pleading could not fix the fundamental flaws in Plaintiff's case: Plaintiff cannot establish Article III standing or state a viable IRPA claim because Meredith never publicly used Plaintiff's name or other identifying information. *See id.* (affirming dismissal with prejudice where amendment would be futile because plaintiffs' legal theory was untenable). Plaintiff fails to explain how amendment could cure these defects. *See* Opp'n at 15 n.4 (seeking leave to amend to "cure any deficiencies," without explaining how Plaintiff could do so).

### CONCLUSION

Plaintiff's Complaint should be dismissed with prejudice for lack of subject-matter jurisdiction under Rule 12(b)(1), or alternatively, for failure to state a claim under Rule 12(b)(6).

---

[10] *See Duffy v. Ticketreserve, Inc.*, 722 F. Supp. 2d 977, 990 (N.D. Ill. 2010) (plaintiff may not supplement complaint by presenting new facts or theories in briefing in opposition to motion to dismiss).

Dated: December 23, 2021          Respectfully submitted,

**COOLEY LLP**

By:    */s/ Tiana Demas*
Tiana Demas (*pro hac vice*)
Robert E. Earles (6308936)
444 W Lake Street, Suite 1700
Chicago, IL 60606
Tel: (312) 881-6500
tdemas@cooley.com
rearles@cooley.com

David E. Mills (*pro hac vice*)
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 842-7800
dmills@cooley.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of December, 2021, I caused a true and correct copy of the foregoing to be filed through the Court's CM/ECF System, which will automatically serve the below Counsel of Record:

J. Dominick Larry
nick@nicklarry.law
NICK LARRY LAW LLC
8 S Michigan Ave, Suite 2600
Chicago, IL 60603

Arun G. Ravindran
aravindran@hedinhall.com
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131

<u>/s/ Tiana A. Demas</u>
Tiana A. Demas